IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

| | | |
|---|---|---|
| LOCAL ACCESS, LLC and | * | |
| BLITZ TELECOM CONSULTING, LLC | | Case No. 6:14-CV-399-ORL40-TBS |
| | * | |
| Plaintiffs | | |
| | * | |
| v. | | |
| | * | |
| PEERLESS NETWORK, INC. | | |
| | * | |
| Defendant/Counter Plaintiff | | |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

**PLAINTIFFS' SUPPLEMENTAL MOTION TO COMPEL
CORPORATE REPRESENTATIVE DEPOSITION
FOLLOWING DISCOVERY DEADLINE**

Plaintiffs, Local Access, LLC ("Local Access") and Blitz Telecom Consulting, LLC ("Blitz"), by and through their undersigned counsel, and pursuant to Federal Rules of Civil Procedure 37(a)(2)(B)(ii) and 37(a)(2)(C) hereby move this Court for an order authorizing the reopening of the deposition of the Defendant, Peerless Network, Inc., ("Peerless" or "Defendant")) and to compel Peerless to produce additional witnesses for examination and to produce documents and\or testimony. In support thereof, the Plaintiffs state as follows:

**I.     PRELIMINARY STATEMENT**

In furtherance of Defendant's well orchestrated plan throughout discovery to avoid providing information and materials properly requested by Plaintiffs, Defendant's crowning moment was its refusal to provide witnesses for topic areas identified by Plaintiffs for a deposition conducted pursuant to Federal Rules of Civil Procedure 30(b)(6). As was fully set forth in Plaintiffs' Motion to Compel Corporate Representative Deposition of Defendant Following Discovery Deadline (Doc. 80), Defendant simply refused to provide a corporate designee to testify

to numerous areas of testimony identified by Plaintiffs' Notice of Deposition.

Not only did Defendant refuse to provide witnesses to testify to specific requested topics for examination, but (i) during the Fed. R. Civ. P. 30(b)(6) depositions, Defendant failed to produce witnesses with sufficient knowledge to testify to those areas that Defendant had agreed to produce witnesses; (ii) after the completion of the Fed. R. Civ. P. 30(b)(6) depositions, Defendant finally (and for the first time) produced the invoices that it maintains are the basis of its Counterclaim[1]; and (iii) after the completion of the Fed. R. Civ. P 30(b)(6) depositions and at 8:22 p.m. on the night before the close of discovery, by Amended Interrogatory Responses, for the first time in these proceedings, Defendant provided its calculation of its damages asserted in its Counterclaim <u>and</u> identified a new witness with specific knowledge of facts in support of the Counterclaim.

In light of Defendant's well documented and blatant discovery gamesmanship played throughout these proceedings, Plaintiff asks that this Court authorize the reopening of the Fed. R. Civ. P. 30(b)(6) deposition of Defendant and compel Defendant to produce additional witnesses for examination and to produce additional documents in support of that testimony.[2]

## II. <u>FACTUAL BACKGROUND</u>

Plaintiffs hereby incorporate by reference the "Factual Background" set forth within the Motion to Compel Corporate Representative Deposition of Defendant Following Discovery Deadline (Doc. 80).

On September 27, 2015, Plaintiffs proceeded with their Fed. R. Civ. P. 30(b)(6) examination. Among the topic areas noticed by Plaintiffs and not objected to by Defendant were

---

[1] The newly produced invoices, it appears, have been modified from the first set of recently produced invoices that purportedly supported a portion of Defendant's Counterclaim.

[2] In a less acrimonious vein, unfortunately the father of one of the intended witnesses for the Fed. R. Civ. P. 30(b)(6) deposition, Scott Kell, had been placed in hospice care immediately before the corporate designee depositions and Mr. Kell's personal deposition. Mr. Kell's deposition was scheduled to be taken, in Chicago, on Monday, August 30, 2015. In addition, the deposition of another Peerless employee, Margaret McNerney, was also scheduled for August 30, 2015. In light of Mr. Kell's unavailability for deposition, the parties expressly agreed to continue both Mr. Kell's and Ms. McNerney's depositions to be conducted at Mr. Kell's personal convenience, albeit after the close of discovery.

the following:

> 5. The amount of traffic, measured in MOU and revenue billed, revenue received and/or collected, generated by Blitz on the Peerless networks for each month during the entire term of the IP Control Agreement that is attached to Peerless' Answer and Counterclaim as Exhibit 1.
>
> 6. The amount of traffic, measured in MOU and revenue billed, revenue received and/or collected on the Peerless networks for each month during the entire term of the IP Control Agreement that is attached to Peerless's Answer and Counterclaim as Exhibit 1.

*See* Plaintiffs' Notice of Taking Deposition of Peerless's Corporate Representative Pursuant to Fed. R. Civ.P. 30(B)(6) attached as <u>Exhibit 7</u> to the Motion to Compel Corporate Representative Deposition of Defendant Following Discovery Deadline (Doc. 80).

Peerless identified it Chief Financial Officer, Douglas Lee, as its corporate designee in order to respond to topics number 5 and 6. The following exchange occurred during Mr. Lee's examination:

> Q. You have been designated by your counsel as the appropriate designee of Peerless Network to testify to certain areas requested within Schedule A of the notice. I'd like to review those with you.
>
> A. Okay.
>
> Q. To make sure that you are, in fact, the right person to discuss these topic areas and are prepared to do so today.
>
> No. 5, we requested a designee to testify to the amount of traffic measured in minutes of use, MOU, and measured in revenue billed, revenue received and/or collected generated by Blitz on the Peerless networks for each month during the entire term of the IP control agreement as attached to Peerless's answer in counterclaim in Exhibit 1. Are you prepared to testify to the information sought in the request No. 5 today?
>
> A. I believe so.
>
> Q. Request No. 6, we sought a designee to testify to the total amount of traffic measured in MOU and revenue billed, revenue received and/or collected in the Peerless networks for each month during the entire term of the IP control agreement that is attached to Peerless's answer and counterclaim as Exhibit 1. Are you the appropriate person for Peerless to testify to the information requested in request No. 6?
>
> A. I believe so.
>
> Q. Are you prepared to testify to the information requested today?

3

A.  Yes.

(*see* applicable portions of "rough" deposition transcript attached hereto as <u>Exhibit A</u>).

Notwithstanding the agreement to provide a witness to testify to the information sought within topic numbers 5 and 6, not only did Mr. Lee fail to have knowledge of the proper information to fully and completely respond, but he brought reports that purported to provide the requested information, albeit that those reports intentionally misstated the information requested and, obviously, were proffered for the purpose of continuing to provide complete information as requested by the Plaintiff.  (See <u>Exhibit B</u>, to be filed under seal).   The following testimony ensued in connection with the intentionally fictitious and non-responsive document that purportedly contained all of the information responsive to topic area number 5:

> Q.  So we know have what is marked 30(b)(6) 4  Can you identify what that is?
>
> A.   Yes.  This was pulled from the same information that we used to put together Bates No.  PN 489 and this would represent an estimation of the dollars billed to the carriers for end office CABS  termination
>
> Q.  And arising out of the specific traffic that is shown in Exhibit No. 6?
>
> A.   Correct.  But only for the -- it would be a revenue estimation for the end office term CABS billed traffic which was stated in the Blitz contract as far as how the commissions would be calculated.
>
> Q.  So does this include the local traffic?
>
> A.  It does not.
>
> Q.  And why not?
>
> A.   Because in the contract with Blitz, it was for, if I remember correctly, I don't have that   contract.
>
> MR. KOUTSOUBAS:   I'll object to the scope but you can answer to your memory.
>
> THE WITNESS:  It was to be paid on end office termination CABS driven.
>
> BY MR. SELLMAN:
>
> Q.  I'll draw your attention back to No. 5  in the topics for the examination today.

> We were seeking information about the amount of traffic measured in minutes of use and measured in revenue billed and revenue received and/or collected generated by Blitz or Peerless networks for each month. This is not qualified to be limited by anybody's interpretation of the contract.
>
> A. Well, when we saw the IP control agreement, the IP control agreement dictates the type of traffic it usually is.
>
> Q. Let's read it in its entirety. The amount of traffic measured in minutes of use and measured in revenue billed, revenue received and/or collected generated by Blitz on the Peerless networks for each months during the entire term of the IP control agreement. Now that doesn't say to be limited by your interpretation of the IP control agreement, does it?
>
> MR. KOUTSOUBAS: Objection.
>
> THE WITNESS: That is not how I gathering the information.
>
> BY MR. SELLMAN:
>
> Q. Is that a mistake?
>
> MR. KOUTSOUBAS: Objection.
>
> THE WITNESS: I don't know if it is or not.
>
> BY MR. SELLMAN:
>
> Q. You just acknowledged that the local -- the revenues generated through local traffic is not contained within your Exhibit No. 7. Is that correct?
>
> A. I believe it is not.
>
> Q. Were you instructed to not bring us that information today?
>
> A. No.
>
> Q. Are you prepared today to provide us the information on the revenue received or collected arising out of the local traffic for each month during the term of the IP control agreement?
>
> A. I am not.

Accordingly, Defendant did not provide a witness to provide testimony on the precise issues articulated and agreed upon for topic no.5 and, instead, Defendant continued to avoid providing the specific information repeatedly requested by Blitz.

Similarly, Defendant and Mr. Lee provided incomplete and intentionally deceptive

5

information related to topic no.6. The following testimony ensued in connection with the intentionally fictitious and non-responsive document that purportedly contained all of the information responsive to topic area number 6:

> Q. Does looking at those numbers, though, given your knowledge as CFO of the business of Peerless, do those numbers appear to be accurate to represent the total amount of revenue billed and revenue received and collected by Peerless for each month during the entire term of IP control agreement?
>
> A. Total revenue. I was working under the assumption that it would be for the same traffic that Blitz has. So we have long distance traffic. We have originating traffic that is not -- that was probably not put in here.
>
> Q. So you don't have originating traffic in that report?
>
> A. Correct. It would not be in here.
>
> Q. Originating meaning local?
>
> A. It could. It could also be long distance. It could be any form of origination traffic.
>
> Q. So local would not have been included in that report; is that correct?
>
> A. Local originating. So if -- if a customer was sending out traffic, then it would not be in here.
>
> Q. Why is that?
>
> A. Like I said, I was working under assumption that we were trying to pull all the customers' traffic that was similar in nature to Blitz's.
>
> Q. So in the report that you prepared reflecting the Blitz revenues then, or excuse me, revenues arising out of the Blitz traffic so that is it fair to assume that that did not include local origination traffic?
>
> A. If it was traffic that Blitz sent to Peerless, it would not.

So – once again Defendant failed to produce a witness with information necessary to respond to two not only critical, but also agreed upon, areas of testimony for a Peerless 30(b)(6) designee. This intentionally evasive testimony from the Chief Financial Office of Peerless was not a mere mistake or misunderstanding. As has been Peerless's pattern, this was yet again a clear and intentional failure to provide information properly sought by Blitz within these proceedings.

### III. ARGUMENT AND AUTHORITIES

Fed. R. Civ. P. 30(b)(6) provides, in pertinent part:

> *Notice or Subpoena Directed to an Organization.* In its notice or subpoena, a party may name as the deponent a public or private corporation, a partnership, an association, a governmental agency, or other entity and must describe with reasonable particularity the matters for examination. The named organization must then designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on its behalf; and it may set out the matters on which each person designated will testify. A subpoena must advise a nonparty organization of its duty to make this designation. The persons designated must testify about information known or reasonably available to the organization.

In *QBE Insurance Corp. v. Jorda Enterprises, Inc.*, 277 F.R.D. 676 (S.D. Fla. 2012), in a subrogation action in which the plaintiff insurer sought to recover from defendant subcontractor the sum that the plaintiff paid over to its insured following a loss, the defendant sought sanctions because the plaintiff refused to produce a suitably knowledgeable witness on various 30(b)(6) topics. In 39 clearly delineated steps, the Federal District Court of Florida, Southern Division, set forth its "de facto Bible" governing organizational depositions, the following examples of which are directly applicable to the intentional obfuscation and improper maneuvering of Peerless:

> 7. A corporation has an affirmative duty to provide a witness who is able to provide binding answers on behalf of the corporation. *Ecclesiastes 9:10–11–12, Inc. v. LMC Holding Co.*, 497 F.3d 1135, 1147 (10th Cir.2007).

> 11. Although the rule is not designed to be a memory contest, the corporation has a duty to make a good faith, conscientious effort to designate appropriate persons and to prepare them to testify fully and non-evasively about the subjects. *Great Am.,* 251 F.R.D. at 540.

16. In other words, a corporation is expected to create an appropriate witness or witnesses from information reasonably available to it if necessary. *Wilson*, 228 F.R.D. at 529. [14]

17. As a corollary to the corporation's duty to designate and prepare a witness, it must perform a reasonable inquiry for information that is reasonably available to it. *Fowler,* 2008 WL 4907865 at p. 5; *Marker*, 125 F.R.D. at 127

When considering this Supplemental Motion in conjunction with the original Motion to Compel filed by Plaintiffs, it is clear that Peerless has (a) failed in its affirmative duty to provide a witness who is able to provide binding answers on behalf of the corporation; (b) failed to make a good faith, conscientious effort to designate appropriate persons and to prepare them to testify fully and *non-evasively* about the subjects; (c) failed to create an appropriate witness or witnesses from information reasonably available to it if necessary, and (d) failed in its duty to perform a reasonable inquiry for information that is reasonably available to it. To the contrary, in light of the intentional obfuscation, delays and misinformation provided by Peerless, it not only failed in the performance of each of these duties, but it did so intentionally with the brazen expectation that there would be no consequences to its actions.

To this end, the insight in the *QBE* decision regarding remedies provides great guidance as to how this Court should address Peerless's failures and gamesman ship, which remedies could range:

> from the imposition of costs to preclusion of testimony and even entry of default." *Reilly v. Natwest Mkts. Grp. Inc.,* 181 F.3d 253, 269 (2d Cir. 1999) (affirming order precluding witness five witnesses from testifying at trial); see also *Taylor*, 166 F.R.D. at 363 ("panoply of sanctions"); *Great Am.,* 251 F.R.D. at 543 ("variety of sanctions"). 27. The failure to properly designate a Rule 30(b)(6) witness can be deemed a nonappearance justifying the imposition of sanctions. *Resolution Trust Corp. v. Southern Union Co., Inc.*, 985 F.2d 196, 198 (5th Cir. 1993)). See also *Black Horse Lane Assoc., L.P. v. Dow Chem. Corp.*, 228 F.3d 275, 305 (3d Cir. 2000) (a 30(b)(6) witness who is unable to give useful information is "no more present for the deposition

than would be a deponent who physically appears for the deposition but sleeps through it").

## IV. **CONCLUSION**

The severe remedies suggested by the Southern District in *QBE* are appropriate in this action. Peerless has gamed the system throughout these proceedings and, at the end, arrogantly failed to produce witnesses for numerous topic areas, produced new information following the completion of all depositions and, for one of the key witnesses produced, simply intentionally provided false information.

Accordingly, Plaintiffs respectfully request that this Court enter an Order:

a. Sanctioning Peerless for its conduct in these proceedings, and entering appropriate relief for the benefit of Plaintiffs, including the entry of a default judgment, precluding the introduction of evidence in defense of Plaintiffs' claims, and for such further relief as this Court deems appropriate; or

b. Compelling Peerless to provide corporate designees to appear for depositions in Florida with information sufficient to provide full and complete responses to every topic area designated by Plaintiffs in their Notice of Deposition; and

c. Awarding Plaintiffs' their reasonable attorneys' fees and costs associated with this motion, pursuant to Fed. R. Civ. P. 37, and the costs, including attorneys fees and cost of travel, associated with the continuation of the Fed. R. Civ. P 30(b)(6) deposition; and

d. Authorizing the depositions of Scott Kell and Margaret McNerney after the close of discovery; and

   e.  Granting such other relief as this Court deems just and equitable under the circumstances.

          Respectfully submitted,

          */s/ David S. Sellman*
          **DAVID S. SELLMAN, ESQUIRE**
          Email: dsellman@sellmanhoff.com
          **TAMMY COHEN, ESQUIRE**
          Email: tcohen@sellmanhoff.com
          SELLMAN HOFF, LLC.
          The Cooperage
          2201 Old Court Road
          Baltimore, MD 21208
          Tel: 410-332-4151 / Fax: 410-332-1746
          Counsel for Plaintiffs

## **LOCAL RULE 3.01(g) CERTIFICATION**

 I HEREBY CERTIFY that the counsel for Plaintiffs conferred with counsel for the Defendants and that the Defendants stand on their objections and oppose the requested relief. Defendant's counsel sought, yet again, an additional meet and confer yet did not have the time to further discuss a resolution prior to the expiration of the discovery deadline.

          */s/ David S. Sellman*
          **DAVID S. SELLMAN, ESQUIRE**

**CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that on the *1st* day of *September* 2015, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to: Henry T. Kelley, Esq. (hkelley@kelleydrye.com), Matthew C. Luzadder, Esq. (mluzadder@kelleydrye.com), Michael R. Dover, Esq. (mdover@kelleydrye.com), KELLEY DRYE & WARREN, LLP, 333 W. Wacker Drive, Suite 2600, Chicago, IL 60606; and Ronnie J. Bitman, Esq. (rbitman@pearsonbitman.com), PEARSON BITMAN, LLP, 485 N. Keller Road, Suite 401, Maitland, FL 32751.

                                            */s/ Tammy Cohen*
                                            **TAMMY COHEN, ESQUIRE**