## UNITED STATES DISTRICT COURT
## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

| | |
|---|---|
| LOCAL ACCESS, LLC and BLITZ TELECOM CONSULTING, LLC, | Civil Action No. 14-cv-00399-PGB-TBS |
| *Plaintiffs* | |
| v. | **DEMAND FOR A JURY TRIAL** |
| PEERLESS NETWORK, INC. | |
| *Defendant / Counterclaim Plaintiff* | |
| v. | |
| LOCAL ACCESS, LLC | |
| *Counterclaim Defendant.* | |

## PEERLESS NETWORK, INC.'S OPPOSITION TO PLAINTIFFS' MOTION AND SUPPLEMENTAL MOTION TO COMPEL CORPORATE REPRESENTATIVE DEPOSITION OF DEFENDANT FOLLOWING DISCOVERY DEADLINE

## TABLE OF CONTENTS

I.      Peerless' Correction of Plaintiffs' Factual Inaccuracies. ...............................................2

II.     Argument ................................................................................................................6

        A.      The Deposition Notice Violated Local Rule 3.02.............................................6

        B.      Topic Nos. 2–4, 11, 12, 16, 17, 37, and 39–41 were Overbroad in
                Seeking Testimony Concerning All "Communications."..................................9

        C.      Topic Nos. 21–25 were Grossly Overbroad and Imprecise ...........................12

        D.      Despite Plaintiffs' Motion, there does not appear to be a dispute
                concerning Topic Nos. 8–10, 27–32, 35, 36, 45, and 47. ...............................13

        E.      The Court Should Reject the Motion and the Supplemental Motion for
                Violating the Local Rules ...............................................................................17

        F.      The relief requested in Plaintiffs' Supplemental Motion is
                unwarranted.....................................................................................................17

III.    Conclusion .............................................................................................................20

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**CASES**

*Buckles v. Focus on Innovation, Inc.*,
  2014 U.S. Dist. LEXIS 36498 (M.D. Fla. Mar. 10, 2014)......................................................6

*Homes & Land Affiliates, LLC v. Homes & Loans Magazine, LLC*,
  2008 U.S. Dist. LEXIS 108363 (M.D. Fla. Sept. 8, 2008) ......................................................6

*Phoenix Life Ins. Co. v. Raider-Dennis Agency, Inc.*,
  2010 U.S. Dist. LEXIS 124961 (E.D. Mich. Nov. 24, 2010) ............................................9, 10

*QBE Insurance Corp. v. Jorda Enterprises, Inc.*,
  277 F.R.D. 676 (S.D. Fla. 2012).......................................................................................8, 13

*Sure Fill & Seal, Inc. v. GFF, Inc.*,
  2009 U.S. Dist. LEXIS 95295 (M.D. Fla. Oct. 2, 2009) ......................................................5, 6

**OTHER AUTHORITIES**

Local Rule 1.05.......................................................................................................................17

Fed. R. Civ. P. 26(b) ...............................................................................................................10

Fed. R. Civ. P. 30(b) ...............................................................................................................10

Fed. R. Civ. P. 37 ....................................................................................................................17

Fed. R. Evid. 1002–03 .............................................................................................................14

Local Rule 1.05.......................................................................................................................21

Local Rule 1.05(a) ...................................................................................................................21

Local Rule 3.01(a) ...................................................................................................................21

Local Rule 3.02............................................................................................................5, 10, 11, 24

Rule 30(b)(6)..................................................................................................................... passim

Defendant Peerless Network, Inc. ("Peerless") collectively responds to Plaintiffs' Motion to Compel the Corporate Representative Deposition of Defendant ("Mot.") (Doc. 80) filed August 27, 2015, and Plaintiffs' subsequent Motion (Doc. 94) filed September 1, 2015 ("Suppl. Mot.").

The Court should deny Plaintiffs' Motion and Supplemental Motion because (1) Plaintiffs' deposition notice, which identified more than 50 topics, was served ten days before the scheduled deposition date in violation of Local Rule 3.02; (2) several of the deposition notices were overbroad in that they asked Peerless to prepare a corporate representative as to "all communications" concerning a particular subject matter; (3) other deposition topics were vague, overbroad, and non-specific in that they simply asked for Peerless' contentions concerning such broad matters as "Peerless's affirmative defenses, and the factual basis for each such defense," without further specificity; and (4) most of Plaintiffs' complaints were mooted by the deposition testimony itself.

Also, the Court should specifically reject the relief requested in Plaintiffs' Supplemental Motion concerning the deposition of Douglass Lee and Topic Nos. 5 and 6. Peerless made a reasonable interpretation of that request and Mr. Lee provided the requested testimony.  Even if the Court disagrees on that point, however, the requested relief has no relation to the alleged prejudice to Plaintiffs.  The Court should simply order Peerless to provide the requested financial figures in a declaration or an affidavit.

Finally, the Court should strike Plaintiffs' papers for failing to conform with the requirements of the Local Rules.

## I.   PEERLESS' CORRECTION OF PLAINTIFFS' FACTUAL INACCURACIES.

In order to have the Court excuse these deficiencies, Plaintiffs resort to sophistry and intentional distortions of the factual record concerning the discussions between the parties.[1] Plaintiffs' motion attempts to lead the Court to believe that Peerless stone-walled their attempts to negotiate a date for a Rule 30(b)(6) notice and that Peerless waited until August 2015 to demand a formal Rule 30(b)(6) notice.  (Mot. at 2.)

This is a total fabrication.  Plaintiffs lead the court to believe that the correspondence between the parties ended with the June 24, 2015 email that they attached as Exhibit 5 to their motion.  (Mot. at 2.)  They fail to tell the Court that four hours after that email, Henry T. Kelly, counsel for Peerless, responded by providing several deposition dates for the individuals identified in the June 24, 2015 email for the middle of July.  A copy of Mr. Kelly's email is attached as Exhibit A and was addressed to all counsel of record.

With respect to the proposed Rule 30(b)(6) deposition, Mr. Kelly *expressly requested* a formal notice of deposition outlining the topics to be discussed at the deposition before a deposition date could be agreed upon in mid-July:  "For the FRCP 30(b)(6) deposition please formalize the request with an actual notice and we can develop the schedule later."  Thus, Plaintiffs' protestations that it "could not prepare an official notice without the date" and that they were forced to unilaterally choose a date on August 17, 2015 ring hollow when, on June 24, 2015, Peerless expressly requested a formal notice with a so-called unilateral date.  *See*

---

[1]  This is not the first time Plaintiffs' counsel has resorted to intentional misrepresentations to distort the record in an attempt to curry favor with the Court.  In the companion case—*Blitz Telecom Consulting, LLC v. Peerless Network, Inc.*, Case No. 14-307—Plaintiffs attached an exhibit where Plaintiffs' counsel intentionally altered emails.  *See* Doc. No. 107 in Case No. 14-307 at pages 5–6.

Middle District Discovery Handbook (2015) at 6 ("counsel may unilaterally notice the deposition while at the same time indicating a willingness to be reasonable about any necessary rescheduling").

In addition, in terms of scheduling, Plaintiffs, naturally, had indicated a desire to take the Rule 30(b)(6) depositions at the same time as the individual depositions.  In Mr. Kelly's June 24, 2015 email, Peerless proposed all depositions to be in the middle of July.  (Ex. A). Three days after Mr. Kelly sent his email. Plaintiffs' counsel responded by indicating that none of the mid-July dates would work for Plaintiffs' counsel and requesting dates for the weeks of August 11th or August 18th—weeks before the September 1, 2015 close of fact discovery.  (Email from E. Myers to H. Kelly, June 27, 2015 (attached hereto as Exhibit B).) Plaintiffs' email made no mention of the Rule 30(b)(6) deposition.  (*Id.*)  On July 1, 2015, Mr. Kelly responded by providing dates for the individual witnesses during those two weeks. (Email from H. Kelly to E. Myers, July 1, 2015 (attached hereto as Exhibit C).)  Plaintiffs then waited until August 3, 2015 to request a further continuance of the depositions to the week of August 24th—the final week of August.  (Email from H. Kelly to E. Myers, Aug. 4, 2015 (attached hereto as Exhibit D).)  The next day, Peerless provided dates for certain individuals for that week.  (*Id.*)  Plaintiffs never raised the Rule 30(b)(6) deposition dates during these discussions.  (*See* Exs. B–D.)

Plaintiffs did not revisit the issue until August 10, when, for the first time, they unilaterally proposed a date of August 24 for the Peerless 30(b)(6) deposition among fourteen other dates for depositions between August 11 and August 31.  (Email from E. Myers to M. Dover, Aug. 10, 2015 (attached hereto as second email in Exhibit E).)

That same day, Peerless' counsel responded with a revision to the schedule, but removed the Peerless 30(b)(6) from the schedule—reiterating Peerless' position that "[w]e have not received Plaintiffs' Rule 30(b)(6) deposition notices and therefore cannot confirm or propose any dates for Plaintiffs' Rule 30(b)(6) deposition of Peerless." (Email from M. Dover to E. Myers, Aug. 10, 2015 (first email in Exhibit E).) The parties had a conversation on August 11, 2015 finalizing the deposition schedule—without a date for the Rule 30(b)(6) deposition. (Email from M. Dover to D. Sellman, Aug. 12, 2015 (attached hereto as Exhibit F).) In the email confirmation of that schedule, Peerless confirmed that it would notify Plaintiffs of the availability of its corporate designees once a formal notice was provided. (*Id.*)

As such, Peerless had always maintained that it would not discuss specific dates and identify specific corporate designees without a formal notice of deposition because Plaintiffs never presented the proposed deposition topics identified in April 23 as "final" deposition topics. (Letter from L. Marcus to H. Kelly, Apr. 23, 2015 (attached hereto as Exhibit G).[2]) Indeed, through various meet-and-confers, Plaintiffs indicated that it would be expanding the number of topics. It would have been fruitless, then, to determine when the Rule 30(b)(6) deposition would take place until all corporate designees had been identified. (*See* Ex. E; Ex. F; Def. Peerless' Objs. and Resps. to Pls.' Notice of Taking Deposition of Peerless' Corporate Rep. Pursuant to Fed. R. Civ. P. 30(b)(6), Aug. 20, 2015 at 1–2 (attached hereto as

---

[2] Peerless notes that the April 23, 2015 letter was supposedly attached as an Exhibit 1 to Plaintiffs' motion, however, the PDF that was downloaded from PACER had pages that were missing. (*Compare* Ex. G, herein, with Mot., Ex. 1 (Doc. 80-1).) Peerless therefore attaches a complete copy for the Court's records as Exhibit G.

Exhibit H).[3])  Naturally, until Plaintiffs finalized their topics, Peerless could not identify all of the corporate representatives that would be required to answer those topics and schedule a deposition date that would be acceptable for all of those individual schedules.  (*See* Exs E–F.)

Finally, on August 12, 2015—twenty days before the September 1, 2015 close of fact discovery—Plaintiffs provided an amended draft list of topics that nearly doubled the amount of topics.  (*Compare* Ex. G *with* Email from D. Sellman to M. Dover, Aug. 12, 2015 (attached hereto as Exhibit I).[4])  Still, Plaintiffs waited another five days—August 17—to serve their formal notice.[5]  (Mot., Ex. 7 (Doc. 80-7).)

In light of the deficient notice, Peerless would have been well within its rights to ignore the August 17, 2015 deposition notice as being untimely.  *Sure Fill & Seal, Inc. v. GFF, Inc.*, Case No.8:08-CV-882-T-17TGW, 2009 U.S. Dist. LEXIS 95295, at *3–4 (M.D. Fla. Oct. 2, 2009).  Nevertheless, in its initial response, Peerless agreed to provide witnesses for certain topics, which were identified in the original April 23, 2015 disclosure of draft topics—subject to its other objections.  (*See* Ex. H at 5–8, 12–14.)  Moreover, Peerless also agreed to provide a witness to discuss Topic No. 23 even though it had not been identified

---

[3]  Peerless notes that Peerless' objections and responses were supposedly attached as Exhibit 8 to Plaintiffs' Motion, but upon inspection of the exhibit downloaded from PACER, pages 4 and 6 of the exhibit were missing.  (*Compare* Ex. H, herein, with Mot., Ex. 8 (Doc. 80-8).)  Peerless therefore attaches a complete copy for the Court's records as Exhibit H..

[4]  As with Exhibits G and H referenced above, Peerless notes that the August 12, 2015 email from Plaintiffs was supposedly attached as Exhibit 6 to Plaintiffs' motion, but, again, there were pages missing from the version downloaded from PACER.  Exhibit I, attached hereto, is a complete version of the August 12, 2015 email from D. Sellman to M. Dover.

[5]  Moreover, the August 17 notice contained even *more* topics than those disclosed in the August 12, 2015 email.  (*Compare* Mot., Ex. 7 (Topic Nos. 5, 6, and 52) *with* Exhibit I.)  Plaintiffs have since withdrawn those additional topics, but they did not withdraw the amendments made to Topic Nos. 5 and 6.

before August 17, because it was related to several topics that had been previously discussed. (*Id.* at 15.) Peerless ultimately agreed to provide witnesses to testify as to Topic Nos. 1, 2, 4–12, 15, 18–20, and 23. (*See* Email from Koutsoubas to Sellman, Aug. 26, 2015 (Exhibit J).)

In all, subject to its other objections, Peerless agreed to provided witnesses for fifteen of the twenty-four topics identified in the original April 23, 2015 letter. It also agreed to provide —including one topic that was not previously identified. The deposition took place on August 27, 2015. Further, despite the deficiencies with the Rule 30(b)(6) deposition notice, Plaintiffs nevertheless were able to ask any questions they desired during the Rule 30(b)(6) deposition sessions and the witnesses were allowed to answer the questions in their personal capacities.

## II.    ARGUMENT

### A.    The Deposition Notice Violated Local Rule 3.02

It is undisputed that Plaintiffs did not provide a proper deposition notice including the requirements of under Fed. R. Civ. P. 30(b) until August 17—ten days before the August 27, 2015 deposition date. This is a violation of Local Rule 3.02, which requires that all deposition notices be served within 14 days of the scheduled deposition. This makes the notice *per se* unreasonable. *See Buckles v. Focus on Innovation, Inc.*, Case No. 6:13-cv-1198-Orl-36TBS, 2014 U.S. Dist. LEXIS 36498, at *4 (M.D. Fla. Mar. 10, 2014); *Sure Fill*, 2009 U.S. Dist. LEXIS 95295, at *3 (M.D. Fla. Oct. 2, 2009) (notice that was less than the amount required by Local Rule 3.02 was "*per se* unreasonable"); *Homes & Land Affiliates, LLC v. Homes & Loans Magazine, LLC*, Case No. 6:07-cv-1051-Orl-28DAB, 2008 U.S. Dist. LEXIS 108363, at *4–5 (M.D. Fla. Sept. 8, 2008). For this reason, alone, the Court

should reject Plaintiffs' motion and award Peerless its reasonable attorneys' fees for responding to this motion.

Also, the Court should reject Plaintiffs' suggestion that providing notice of the topics on August 12, 2015, of the draft deposition notice was sufficient to comply with the Local Rule. The reason for this is simple: no date for a deposition had been suggested by Plaintiffs in connection with its unilateral attempt to double the scope of the deposition. As such, while the August 12, 2015 made Peerless aware of the expansion of potential topics, the email itself, without even a proposal for a date, cannot be considered a "written notice." Indeed, the only date that had ever been suggested by Plaintiffs during the negotiations was August 24, 2015 (*see* Ex. E), which, by the time Plaintiffs' expanded their list, was less than 14 days from August 12, 2015.

In any event, even if one were to take the August 12 email as the "notice" required by Local Rule 3.02, which it is not, such short notice is still unreasonable in fact. The Court's scheduling order in this case provided that "[e]ach party shall timely serve discovery requests so that the Rules allow for a response prior to the discovery deadline." (Order, Dec. 23, 2014 (Doc. 35) at 3.) Plaintiffs' delays were inexcusable. After Peerless initially suggested that all depositions occur in mid-July, all depositions were postponed to mid-August (and then late-August).

As noted above, August 12, 2015 email did not even offer a proposed deposition date. Fact discovery was set to close, however, on September 1, 2015—twenty days later. The August 17, 2015 formal deposition notice was also only fifteen days before the close of fact discovery. The number of topics exceeded 50 at this point. Whether one takes August 12 or

August 17 as the date of notice of the requested topics, neither would "allow for a response prior to the discovery deadline"—particularly with respect to Topic Nos. 26 through 51, which were introduced, for the first time, on August 12, 2015 in an email.  Indeed, while the Local Rule states that fourteen days is the minimum notice, this district's discovery handbook states that "giving substantially more than fourteen days notice is strongly encouraged."  Middle District Discovery (2015) at 6.

Here, providing "substantially more than fourteen days" notice would have been essential to prepare a corporate representative(s) on twenty-five brand-new topics.  As Plaintiffs' admit, there are substantial burdens placed on organizations in responding to a deposition notice under Fed. R. Civ. P. 30(b)(6).  As Plaintiffs note in their Supplement to the Motion, *for each* of the 52 topics, Peerless "ha[d] an affirmative duty to provide a witness who is able to provide binding answers on behalf of the corporation."  (Suppl. Mot. at 7 (quoting *QBE Insurance Corp. v. Jorda Enterprises, Inc.*, 277 F.R.D. 676, 688 (S.D. Fla. 2012)).)  Peerless must then "make a good faith, conscientious effort to designate appropriate persons and to prepare them to testify fully and non-evasively about the subjects."  (Suppl. Mot. at 7 (quoting *QBE*, 277 F.R.D. at 689).)  Twenty days before the close of fact discovery (and thirteen business days) is simply not enough time to prepare a witness for this responsibility such that it would be fair to bind that witness's testimony to the company at large.

Moreover, Plaintiffs were aware of practical limitations of Peerless' counsel at this time.  As set forth in the August 12, 2015 email exchange between counsel, between August 12, 2015 and the close of fact discovery, there were to be twelve depositions spread out

across the country in Florida, Maryland, Alabama, Chicago, New York, and Dallas. Specifically, Plaintiffs were aware that Peerless' counsel would be away from Chicago on August 14, 19-21, and 27.   This further compounded the prejudice against Peerless by leaving only eight business days (from August 12) in order for Peerless' counsel to prepare Peerless' corporate representatives to testify.   Taking into account the schedules of the individuals best suited to discuss the twenty-five new topics—in the middle of August—there was simply not a enough time to prepare the corporate representatives before the close of fact discovery.

Accordingly, the Court should deny Plaintiffs' Motion as providing insufficient notice for all topics.   Alternatively, the Court should deny Plaintiffs' Motion for providing insufficient notice for the topics that were first provided on August 12, 2015:  Topic Nos. 23 and 26–52.

**B.      Topic Nos. 2–4, 11, 12, 16, 17, 37, and 39–41 were Overbroad in Seeking Testimony Concerning All "Communications."**

Aside from Peerless' objections concerning the insufficient notice, Peerless objected to Topic Nos. 3, 16, 17, and 37 for requiring a witness to be prepared to provide binding testimony concerning all "communications" within the subject matter of that topic.   In addition, Peerless objected to portions of Topic Nos. 2, 11, 12, and 39–41 that required the same information.

Regardless of the narrow breadth of the topic, it is unduly burdensome to attempt to prepare a corporate representative (or several corporate representatives) to provide testimony as to all communications.  *See Phoenix Life Ins. Co. v. Raider-Dennis Agency, Inc.*, Civil

Action No. 07-cv-15324, 2010 U.S. Dist. LEXIS 124961, at *8–9 (E.D. Mich. Nov. 24, 2010).   The task is sufficiently daunting even if the topic were limited to written communication.   Peerless has produced more than 3,300 emails in response to Plaintiffs' discovery requests.   Many of those emails, conceivably, would fall within the scope of these Topics and a Peerless corporate representative would be expected to be knowledgeable of all of those emails—regardless of whether the individual was personally knowledgeable of that communication.

Under Fed. R. Civ. P. 26(b)(2)(C)(i), this Court must limit Plaintiffs' deposition notice to the extent that "the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive."   The emails, themselves, are in the record and speak for themselves.   *See* Fed. R. Evid. 1002–03.   Moreover, Rule 30(b)(6) is not necessary to obtain any background testimony concerning those communications since the Peerless employees listed on the emails could be (and have been) deposed in their individual capacity.   When one adds "oral communications" into the possible communications, that then requires Peerless to perform an interview of each of its employees to determine who might have had such communications.   That is in impossible task for one (or more) corporate designees to undertake.

In event, for each of the aforementioned topics, Plaintiffs had access to the individuals with personal knowledge of the relevant communications at issue, and, Plaintiffs took advantage of those opportunities in those depositions.   For instance, for Topic Nos. 2 and 3, which sought "communications and negotiations" concerning Blitz's proposed sale and internal communications at Peerless regarding the same, Peerless designated Mr. Knight

for Topic No. 2 only to testify as to "negotiations."  However, Mr. Barnicle, Peerless' CEO, was deposed on August 28 and was identified as the individual who directly dealt with Blitz and its principals concerning Blitz's proposed sale.  Plaintiffs elicted extensive testimony of the topic in all three depositions.  (*See, e.g.*, Deposition of R. Knight ("Knight Dep."), Aug. 26, 2015, (excerpts attached hereto as Exhibit K), at 41:50:21, 55:12–60:17, 94:22–97:6, 108:17–113:12, 116:15–118:5; Rule 30(b)(6) Deposition (R. Knight) ("Knight 30(b)(6) Dep."), Aug. 27, 2015 (excerpts attached as Exhibit L), at 15:10–20:19; Deposition of J. Barnicle (rough) ("Barnicle Dep.") (excerpts attached hereto as Exhibit M), at 79:14–84:22.) Accordingly, for Topic Nos. 2 and 3, Plaintiffs clearly had access to the individuals most knowledgeable about Peerless' position on the proposed sale of Blitz.

For Topic No. 4, which generally sought the internal communications at Peerless "regarding Peerless' desire and efforts to prevent Blitz from selling its business," Peerless designated Mr. Knight to testify as to whether Peerless' board, officers, and/or other decision makers made a determination to try to prevent Blitz's sale and what steps were taken to implement that strategy.  Notably, Plaintiffs did not ask Mr. Knight any questions concerning this topic at his 30(b)(6) deposition.

Next, Topic Nos. 11 and 12 generally sought communications with either plaintiff concerning the Homing Tandem Agreement.  Mr. Knight testified that he was the person at Peerless responsible for the Homing Tandem Agreement and he provided extensive testimony concerning those communications at both his personal and corporate depositions. (Knight Dep. (Ex. K) Tr. 50:22–53:21, 78:12–148:16, 165:22–177:11, 180:6–182:13, 183:3–

11

188:3; Knight 30(b) Dep. (Ex. L) Tr. 70:10–74:12, 81:7–96:12, 101:19–104:5; 105:15–113:19, 118:2–131:23; 133:6–18.)

Topic Nos. 16 and 17 generally concerned communications between Peerless and Plaintiffs concerning DS-3 facilities. While Peerless did not formally designate someone on this Topic, it did designate Mr. Knight for the similar Topic No. 15, which was very similar: "Any requests by Blitz or Local Access to Peerless for DS-3 facilities at any time from November 1, 2010 through the date of deposition." Nevertheless, Plaintiffs dismissed Mr. Knight from his portion of the Rule 30(b)(6) deposition without asking Mr. Knight a single question concerning DS-3 facilities. Plaintiffs also did not ask Mr. Knight a single question about DS-3 facilities in his personal deposition.

Finally, Topics 39 through 41 generally concerned communications with three specific companies that Plaintiffs. While Peerless did not agree to produce a witness for these topics because the notice was untimely, Peerless nevertheless designated Mr. Knight for other topics generally related to contract negotiations with other prepaid calling card companies. There, Mr. Knight generally testified as to Peerless' efforts to steer customers to Local Access. (Knight Dep. Tr. (Ex. K) 60:18–68:13, 121:8–21, 125:11–127:12, 148:17–165:21, 178:2–180:6; Knight 30(b)(6) Dep. (Ex. L), 37:5–42:11, 48:2–50:13, 58:12–60:4, 125:1–21, 131:19–133:2).

### C.     Topic Nos. 21–25 were Grossly Overbroad and Imprecise

Aside from the objections concerning "communications," the only other substantive objection that Peerless made concerned Topic Nos. 21–25, which were extremely overbroad, imprecise, and improper for a Rule 30(b)(6) deposition topic:

21. Any agreements between Peerless and Blitz, written or otherwise, that Peerless contends have any materiality to this case.

22. Any agreements between Peerless and Local Access, written or otherwise, that Peerless contends have any materiality to this case.

24. Peerless' s affirmative defenses, and the factual basis for each such defense.

25. Peerless's counterclaim, and the factual basis for such counterclaim.

The breadth of these topics is self-evident. Each would be appropriate interrogatory questions. However, such broad topics are inappropriate for Rule 30(b)(6) depositions. As Plaintiffs' themselves note in their Supplemental Motion, Rule 30(b)(6) depositions are not designed to be memory tests. (Suppl. Mot. at 7 (quoting *QBE*, 277 F.R.D. at 689). For instance, if, in response to Topic No. 25, the Rule 30(b)(6) witness forgets a "factual basis" for the counterclaim under the pressure of a deposition, Plaintiffs would likely argue that Peerless should be barred from raising that factual basis at trial. *See* Fed. R. Civ. P. 37. The same could be said for any of the topics listed above. For this reason, 30(b)(6) topics that seek a party's legal and factual contentions are generally disfavored and interrogatories are generally the appropriate vehicle for "contention discovery."

> **D.**    **Despite Plaintiffs' Motion, there does not appear to be a dispute concerning Topic Nos. 8–10, 27–32, 35, 36, 45, and 47.**

Plaintiffs failed to supplement their motion as to several Topics that appeared to have been addressed at the respective Rule 30(b)(6) depositions of Richard Knight and/or Douglass Lee—even for Topics that were untimely. Peerless contends that this is the case for Topic Nos. 8–10, 27–32, 35, 36, 45, and 47.

For instance, there can be no issue with Topic No. 36, which sought Peerless' knowledge as to which customers were involved in the prepaid calling card business. This was precisely the type of information that Peerless agreed to provide (and did provide) in connection with the designation of Mr. Knight for Topic No. 7. (*See* Mot. at 7 (regarding Topic 7: "Peerless agreed to produce a witness to testify as to which of its customers Peerless knows to be in the prepaid calling card business and those that have represented to Peerless that they are in that business."). There can be no dispute that Mr. Knight provided this testimony. (Knight Dep. (Ex. K), 13:23–15:2, 68:14–77:20; Knight 30(b)(6) Dep. (Ex. L), 22:5–22.)

Moreover, Topic No. 8 generally sought "[t]he contractual terms between Peerless and each of its prepaid calling card clients in place during the period of June 1, 2011 through the date of deposition." Similarly, Topic Nos. 29–32 asked for similar information concerning those contracts.[6] Peerless designated Mr. Knight for Topic No. 8 to testify as to *all* of the contractual terms of those clients identified in response to Topic No. 7, which sought the "identities of all prepaid calling card clients, Prepaid Call Card Platform Providers, Prepaid Calling Card business, and/or Prepaid Calling Card Customers of Peerless from June 1, 2011 through the present." Mr. Knight, however, did not limit his preparation or his testimony to matters outside the treatment of prepaid calling card minutes—nor did Peerless represent that he would only be prepared in a manner so as to avoid any knowledge concerning the other terms of the contracts at issue. (*See, e.g.* Knight 30(b)(6) Dep. Tr. (Ex.

---

[6]   Peerless objected to this request as untimely as only having been identified in August 12, 2015. Nevertheless, Mr. Knight discussed the subject matter of Topic Nos. 29 through 32 in his deposition.

L), 23:17–21.)  He was prepared to discuss all aspects of the contracts—and did so—at his

deposition.  (*See* Knight Dep. Tr. (Ex. K.) 41:23–50:21, 68:14–77:20, 182:14–183:2, 185:14–

188:3; Knight 30(b)(6) Tr. (Ex. L) 22:23–37:3, 48:2–70:9; 96:13–101:10.)  As such, there

does not appear to be a dispute with respect to Topic Nos. 8 and 29–32.

There also does not appear to be a real dispute with respect to Topic No. 9, which

requested "the volume of traffic generated by Peerless's prepaid calling card clients,

measured both in MOU and revenue, for each month from June 2011 through the date of

deposition."  Aside from the fact that this topic was better suited to be an interrogatory,

which it was in the companion case, Peerless designated Douglass Lee to testify as to this

topic and he provided a spreadsheet outlining the "minutes of use" for each identified prepaid

calling card client—largely providing the same information that Mr. Lee provided in

response to a nearly identical interrogatory in the companion case.[7]  (Rule 30(b)(6)

Deposition of Douglass Lee (Ex. N) Tr. 65:22–78:4.)

Next, there should be no dispute surrounding Topic Nos. 10, 27, 28, and 47.[8]  Each of

the topics generally concerned Peerless' efforts to direct prepaid calling card clients to

Plaintiffs.  Peerless identified Mr. Knight to testify as to Topic No. 10, and was prepared to

testify as to the prepaid calling card clients (identified in Topic No. 7) that were

transferred/referred directly to Plaintiffs and those prepaid calling card clients that simply left

Peerless.  Further, Mr. Knight testified at length on this topic concerning these efforts.

(Knight Dep. Tr. (Ex. K) 60:18–68:13, 121:8–21, 125:11–127:12, 148:17–165:21, 178:2–

---

[7] The only issue at the deposition appeared to be a misreading of the appropriate date range as June 2012 as opposed to the agreed April 2012.  Peerless indicated it would provide data from April and May of 2012.

[8] Peerless objected to Topic Nos. 27, 28, and 47 as untimely as only having been identified in August 12, 2015. Nevertheless, Mr. Knight discussed the subject matter of these topics in his deposition.

180:6;  Knight  30(b)(6)  Dep.  (Ex.  L),  37:5–42:11,  48:2–50:13,  58:12–60:4,  125:1–21, 131:19–133:2).  It is unclear what remains at issue with these Topics.[9]

Further, despite the fact that it was untimely as having only been identified in August 12, 2015, Plaintiffs should have no issue with Topic No. 35 which sought "[k]nowledge of the contract negotiations between Peerless and Local Access or its principals regarding the Tandem Homing Agreement [sic] in 2012."  This topic is essentially identical to Topic No. 11 for which Mr. Knight was designated to testify concerning "negotiations with Local Access and its principals leading to the execution of the Homing Tandem Agreement."  (Ex. H. at 11.)  Further, Mr. Knight testified at length on this topic.  (Knight 30(b)(6) Dep. Tr. (Ex. L) 70:10–74:12;.)

Finally, there should be no issue with Topic No. 45.  While, again, Peerless objected to this request as untimely, Mr. Knight was the individual with knowledge as to each of Peerless' customers that utilized Homing Tandem Services and provided that list at his deposition.  (Knight 30(b)(6) Dep. Tr. 77:3–78:20, 79:12–81:6, 86:7–87:5.)

Accordingly, the Court should reject Plaintiffs' motion to compel further testimony on these topics.

---

[9]  Peerless' original objection to this Topic was identical to the objection lodged against Topic No. 7—that it was impossible to know whether a client (or a client's traffic) are related to a prepaid calling card business. But, once the parties agreed to limit the inquiry at the deposition to those companies that Peerless knew to be in the prepaid calling card business and/or those that had represented to Peerless that they are in the prepaid calling card business, the parties agreed to use that baseline list for the remainder of the "prepaid calling card companies" topics.

### E.     The Court Should Reject the Motion and the Supplemental Motion for Violating the Local Rules

Plaintiffs' failure to follow the local rules provides another basis for this Court to reject Plaintiffs' motion (and supplemental motion).  First, Plaintiffs' Motion (Doc. 80) at twenty-four pages and Plaintiffs' Supplemental Motion (Doc. 94) at ten pages violate Local Rule 3.01(a), which states that a motion should include all required information in a "single document not more than twenty-five (25) pages."  Local Rule 3.01(a).  Plaintiffs never sought leave to file a supplemental motion and never sought leave to exceed the page limit.  If Plaintiffs wanted to amend their motion, the appropriate course of action would have been to withdraw their August 27, 2015 motion and resubmit it on September 1, 2015 with the precise relief requested in a single document not to exceed 25 pages.

Second, both of the briefs violate the typography and margin requirements set forth in Local Rule 1.05—with changes specifically designed to make the document appear to be shorter than it really is.  First, Local Rule 1.05(a) requires 1.25 inch margins at the top, bottom, and left margins and a 1 to 1.25 inch right margin.  Both papers have 1 inch margins throughout.  (*See* Doc. 80, Doc. 94.)  In addition, Local Rule 1.05(a) requires the font size to be twelve-point type throughout the document—except for footnotes.  The quoted excerpts in Plaintiffs' supplemental motion were all in ten point font.  (Doc. 94 at 3–7.)

### F.     The relief requested in Plaintiffs' Supplemental Motion is unwarranted.

On September 1, 2015, Plaintiffs filed a supplement to the motion that focused on Topic Nos. 5 and 6, and the preparation of Mr. Lee on those topics.  For the reasons set forth above, the Court should disregard the Supplemental Motion in its entirety.

Nevertheless, setting aside the needless *ad hominem* attacks, Peerless notes the following. Peerless identified and prepared Mr. Lee to discuss Topic Nos. 5 and 6, but subject to its objections. Notably, while Topic Nos. 5 and 6 were accurately depicted on page 3 of the Supplemental Motion, what Plaintiffs do not reveal is that Peerless had objected to (and continued to object to) providing the portion of the topics that referred to "revenue billed, revenue received, and/or collected" because those portions of the topics were not identified until the August 17, 2015 notice—*ten days* before the scheduled deposition. The original topics in the April 23 letter read:

> 5. The amount of traffic, measured both in MOU and revenue, generated by Blitz on the Peerless networks [sic] for each month during the entire term of the IP Control Agreement that is attached to Peerless' Answer and Counterclaim as Exhibit 1.
>
> 6. The total amount of traffic measured both in MOU and revenue on the Peerless networks [sic] for each month during the entire term of the IP Control Agreement that is attached to Peerless' Answer and Counterclaim as Exhibit 1.

(Ex. G at 2.) This was unchanged in the August 12, 2015 Email. (Ex. F at 2.) The topics were not amended to include the details "revenue billed, revenue received and/or collected" until the August 17, 2015 notice.

Contrary to the language used in Plaintiffs' motion to describe Mr. Lee's testimony, there were no intentional misstatements of facts provided at his testimony. The key dispute appears to be whether Topic Nos. 5 and 6 also requested information concerning revenue related to "local" traffic. Mr. Lee and Peerless did not interpret those requests as encompassing that type of traffic, in part, because the vagueness of the terms used in the Topics and the context of the two cases. Moreover, these two topics were identical to the

information requested (and answered) in interrogatories in the companion case.   Mr. Lee simply provided the same information to Plaintiffs here that Peerless provided to Blitz in the prior case.

Put simply, the contract in the Blitz case only concerned "end office termination traffic" and the minutes-of-use related to that type of traffic.  Without further clarification as to the revenue and minutes being requested, it was natural for Mr. Lee to assume the same applied here.

Nevertheless, Peerless was willing to compromise on this issue and provide the figures to Plaintiffs in the form of a written affidavit or declaration.  As noted previously, this is the type of information that is otherwise better suited for interrogatories and, had Plaintiffs not missed the deadline for serving interrogatories so that they could be answered in time for the close of fact discovery, they likely would have included such interrogatories.   A continuation of the deposition—or any of the other ludicrous sanctions that Plaintiffs are requesting—is unnecessary in order to simply transmit the numbers that Plaintiffs contend were missing from Mr. Lee's report.  Moreover, as Mr. Lee testified, it would only take a day to gather the requested information concerning "local traffic."   (Lee 30(b)(6) Dep. (Ex. N), 43:2–11.).    As set forth above, the Court should reject Plaintiffs' motion because Topic Nos. 5 and 6 were not present, in their current form, until ten days before the deposition. Second, if the Court is to order further action with respect to Topic Nos. 5 and 6, it should merely order Peerless to produce the information in a verified written form.

Further, if Plaintiffs insist on taking another deposition of Mr. Lee after that point, the Court should order Plaintiffs do that at their own expense.   Indeed, as Plaintiffs note in

footnote 2 of their Supplemental Motion, they will be returning to Chicago to depose two of Peerless' employees after the close of fact discovery due to a personal issue concerning one of the employees' father.  If a deposition of Mr. Lee is to take place, it can occur on the same day as those depositions.

## III.    CONCLUSION

It is undisputed that the August 17 deposition notice, which was the only formal deposition notice, was not within the 14 days required by Local Rule 3.02.  In addition, Plaintiffs fabricated the story that provided their supposed excuse for violating Local Rule 3.02.  It is also undisputed that Plaintiffs' papers clearly do not conform to this Court's requirements and are over the page limit.   In addition, as set forth above, the limits that Peerless placed on its testimony concerning "communications" and its contentions were also valid.  For these reasons, alone, the Court is well-within its power to reject Plaintiffs' motion.

Moreover, the Court should also note in its decision the fact that Plaintiffs did not supplement their motion, as they said they would, to account for the testimony that they actually received.  As set forth above, most of the topics that were at issue in their August 27 motion were addressed in the various depositions.  Other than harassment of the witness, it is unclear what could be gained from an order re-opening those depositions.

Finally, as set forth above, the Court should reject Plaintiffs' attempts to sanction Peerless for what might be, at best, an honest mistake in the interpretation of vague Topics. To the extent Plaintiffs suffered any prejudice, the appropriate remedy would be a simple declaration providing the information that they contend Mr. Lee was unprepared to provide.

September 10, 2015                                    Respectfully submitted,

                                                     By: /s/ Constantine Koutsoubas_____
                                                     Henry T. Kelly (*pro hac vice*)
Mr. Ronnie J. Bitman                                 Matthew C. Luzadder (FL Bar #.0011286)
Pearson Bitman, LLP                                  Michael R. Dover (*pro hac vice*)
Ste. 401                                             Constantine Koutsoubas (*pro hac vice*)
485 N. Keller Rd.                                    Catherine E.  James (*pro hac vice*)
Maitland, FL 32751                                   KELLEY DRYE & WARREN LLP
(407) 647-0090                                       333 W. Wacker Dr., 26th Floor
rbitman@pearsonbitman.com                            Chicago, IL 60606
                                                     (312) 857-7070
                                                     hkelly@kelleydrye.com
                                                     mluzadder@kelleydrye.com
                                                     mdover@kelleydrye.com
                                                     ckoutsoubas@kelleydrye.com
                                                     cjames@kelleydrye.com

                                                     *Attorneys for*
                                                     *Defendant Peerless Network, Inc.*

## CERTIFICATE OF SERVICE

     The undersigned, an attorney of record, hereby certifies that he caused copies of **Peerless Network, Inc.'s Opposition to Plaintiffs' Motion and Supplemental Motion to Compel Corporate Representative Deposition of Defendant Following Discovery Deadline** to be served upon all Filing Users via the Court's ECF system on this 10th day of September, 2015, and that all exhibits that were to be filed under seal has been delivered to attorneys of record via email.


                                  ___/s  Constantine Koutsoubase_____
                                          Constantine Koutsoubas