UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

LOCAL ACCESS, LLC, *et al.*,

      Plaintiffs,

v.

                                  Case No:   6:14-cv-399-Orl-40TBS

PEERLESS NETWORK, INC.,

      Defendant.

_____

## ORDER

This case comes before the Court without oral argument on Defendant Peerless Network, Inc.'s Motion for Sanctions and to Compel a Complete Production (Doc. 62). Both Plaintiffs have filed responses in opposition to the motion (Docs. 70-71).[1]   For the reasons that follow, the motion is due to be **GRANTED in part** and **DENIED in part**.

## I. Background

This action arises out of a dispute between Plaintiffs Local Access, LLC ("Local Access") and Blitz Telecom Consulting, LLC ("Blitz"), and Defendant Peerless Network, Inc. ("Peerless"), over the planned sale of Blitz to one of Peerless' competitors.   The amended complaint alleges that in late 2011, Blitz engaged investment bank and brokerage firm Cantor Fitzgerald to explore the market and identify and approach potential buyers of Blitz or a subset of its assets (Doc. 4, ¶ 16).   Cantor Fitzgerald identified West Corporation ("West") as a prospect willing to pay $8.5 million for Blitz, as evidenced by a letter of intent (Doc. 62 at 2).   Plaintiffs allege that Peerless fraudulently

---

[1] Plaintiffs object to being named in a single motion.   Plaintiffs assert that they keep separate business records, have separate claims against Peerless, and that separate motions should have been filed against them (Doc. 70 at 1; Doc. 71 at 1).

induced Blitz to forego this opportunity and later breached a contract with Local Access (Doc. 4).   Peerless has counterclaimed against Local Access for breach of contract and quantum meruit (Doc. 34).

Peerless propounded its first request for production of documents to Plaintiffs on December 24, 2014 (Doc. 62-8).   Plaintiffs interposed objections, counsel conferred, and at the end of April, Plaintiffs began producing documents on a rolling basis (Doc. 62 at 7). Plaintiffs made their final production on July 7, 2015 (Id. at p. 10).   Peerless argues that Plaintiffs have failed to produce all responsive documents (Doc. 62).   Plaintiffs represent that they have searched their files in good faith and, with the exception of documents for which an objection has been interposed, have produced all documents requested by Peerless (Doc. 70, p. 2; Doc 71, p. 2).

## II. Standard

"[P]arties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense."   FED. R. CIV. P. 26(b)(1).   Still, there are limits to what a party may discover.   A court "must limit the frequency or extent of discovery" if it determines that the discovery sought is unreasonably cumulative or duplicative or more reasonably obtainable from another source; that the requesting party has had ample opportunity to obtain information; or that the burden of the proposed discovery outweighs the likely benefits, "considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues."   FED. R. CIV. P. 26(b)(2)(C).

Parties may serve requests "to produce and permit the requesting party or its representative to inspect, copy, test, or sample" documents, electronically stored information, or other "tangible things" that are "in the responding party's possession,

custody, or control." FED. R. CIV. P. 34(a)(1).   Requests "(A) must describe with reasonable particularity each item or category of items to be inspected; (B) must specify a reasonable time, place, and manner for the inspection ... ; and (C) may specify the form or forms in which the electronically stored information is to be produced." FED. R. CIV. P. 34(b)(1).   The recipient of a request for production has 30 days to respond. FED. R. CIV. P. 34(b)(2)(A).   "[A]n evasive or incomplete disclosure, answer, or response" is "treated as a failure to disclose, answer, or respond." FED. R. CIV. P. 37(a)(4).

Rule 37 of the Federal Rules of Civil Procedure authorizes a motion to compel discovery when a party fails to provide proper response to requests for production of documents under Rule 34. FED. R. CIV. P. 37(a)(3)(B).   "The proponent of a motion to compel discovery … bears the initial burden of proving that the information sought is relevant." Moore v. Lender Processing Servs. Inc., No. 3:12-CV-205-J, 2013 WL 2447948, at *2 (M.D. Fla. June 5, 2013) (internal quotations omitted) (quoting Diamond State Ins. Co. v. His House, Inc., No. 10-20039-CIV, 2011 WL 146837, at *5 (S.D. Fla. Jan. 18, 2011)).   The party moving to compel discovery must certify that it "has in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action." FED. R. CIV. P. 37(a)(1).   See also M.D. FLA. R. 3.01(g).

## III. Discussion

Peerless cites numerous requests for production to show that it made comprehensive requests for documents relating to Plaintiffs' claims, but it does not specify which requests Plaintiffs failed to comply with (Doc. 62, pp. 4-7).   Accordingly, instead of discussing specific requests for production, the Court will address separately each allegedly missing document or category of documents.

Peerless argues that Plaintiffs have not produced requested financial data or documents related to Cantor Fitzgerald or West.   (Id. at pp. 2-3).   In support of this contention, Peerless cites to a number of documents or categories of documents as evidence that Plaintiffs' productions were deficient.

Blitz represents that it has produced all of the documents in its possession that it previously gave to West or Cantor Fitzgerald (Doc. 70, p. 8).   Blitz also represents that in an effort to ensure that its production was complete, it asked Cantor Fitzgerald for any documents Blitz sent to it and any documents Cantor Fitzgerald prepared and provided to West, so that Blitz could produce them to Peerless (Id.).   Cantor Fitzgerald had produced a few documents when Peerless served a subpoena on it (Id.).   Upon receipt of the subpoena, Cantor Fitzgerald referred the matter to its lawyers (Id.).   Since then, the Court understands Blitz has not received any additional documents from Cantor Fitzgerald.

Peerless argues that a May 11, 2012 letter of intent from West indicates that Cantor Fitzgerald and Blitz provided financial information and data to West during negotiations for the sale and purchase of Blitz (Doc. 62, p. 11).   It asserts that this financial information and data has not been produced (Id.).   The pertinent language in the letter of intent provides:

> West has performed only limited due diligence to date.   We would need to complete our due diligence review prior to entering into a definitive agreement ….   Our due diligence investigation would be customary for a transaction of this nature and would include a review of the Business's recent financial results, projections, CLEC agreements, customer relationships, sales pipeline, technology, operations, tax compliance, and legal and regulatory matters.

(Doc. 62-2, pp. 2-3).   Peerless' arguments to the contrary notwithstanding, the letter of intent shows that if it was accepted, West would require substantial due diligence.   The letter of intent does not evidence that when it was written, Cantor Fitzgerald and Blitz had already provided financial information and data to West.

Peerless subpoenaed documents concerning this lawsuit from West (Doc. 62, p. 11).   Among the documents West produced in response to the subpoena are several financial statements it received from Blitz, which Blitz never produced to Peerless (Id.).   Blitz represents that these documents do not reside in its files or systems and it speculates that they may be internal documents created by West or Cantor Fitzgerald (Doc. 70, pp. 10-11).

West also produced documents titled "BTC [Blitz] February 2012 Billing Summary," "BTC Top Customers," "Cantor BTC Jan-March 212 Revenues," and "Cantor Revenue by Category Report–Cash & Accrual Basis–Recip."   (Doc. 62, pp. 11-12).   Again, Blitz represents that these documents are not contained in its files, and speculates that they may have been prepared by Cantor Fitzgerald (Doc. 70, p. 11).   In particular, Blitz points to documents labelled "BTC Top Customers" and "BTC February Billing Summary 2012" which are stamped as Cantor Fitzgerald's confidential documents and are not in a form typically used by Blitz (Id.).

Peerless next points to a meeting request from Cantor Fitzgerald to Blitz for a "Call to go over West due diligence requests."   (Doc. 62, p. 11).   Attached to the request is an Excel spreadsheet titled "Barrage Diligence Requests" (Id.).   The spreadsheet includes a list of data requested by West, as well as notes on the response (Id.).   According to the spreadsheet, West had asked for "revenue broken down by Product/Service (DID, DSO Port, Usage, Recip Comp)," and the spreadsheet notes that "[w]e have for Sept-11

through Feb-12." (Id.).   The spreadsheet indicates that Blitz can demonstrate revenue "using Blitz Customer Accounting History 2007 to Feb 2012 detail.xlsx." (Id.).   Peerless alleges that this Customer Accounting History was not produced, information breaking down revenue by product was not produced, and no information regarding revenue for either Plaintiff was produced (Id.).

Once again, Blitz represents that it has already produced everything in its possession (Doc. 70, p. 9).   It also notes that of the 9 due diligence items listed on the spreadsheet, 3 indicate that the documents were outstanding and not yet produced to West, including the last 3 years of financials (Id. at pp. 9-10 ).   Another item references a discussion to be had in person and not documents (Id.).   Blitz represents that it has already produced the management presentation referred to in item 5 (See Doc. 70, Exhibit G, to be filed under seal).   "Blitz does not recall which specific documents are referred to in items 2 and 3 which is the 'Blitz Customer Accounting History 2007 to Feb. 2012 detail' that Peerless complains about.   Despite its good faith search, Blitz did not have any documents in its records that would fit the item description." (Doc. 70, p. 10). "As to the page stamped BTCLA0000187, Items 8-8D, 10 and 11 are marked as outstanding and not produced to West and item 9 was contained in the management presentation which was produced." (Id.).

Next, Peerless points to an email it says indicates that Cantor Fitzgerald actually had up to three offers for Blitz to consider but only documents relating to West have been produced (Doc. 62, p. 10).   The email states that Blitz was "obligated to Cantor Fitzgerald to talk to the 3 opportunities they have before [Blitz] over the next couple weeks." (Doc. 62-3).   Blitz represents that "[t]he only formal written offer that Blitz received was from West through Cantor Fitzgerald and it was produced by Blitz." (Doc.

70, p. 12).   Blitz also represents that "Cantor Fitzgerald explored many opportunities and only Cantor Fitzgerald knows how many other potential acquirers it spoke with as not all opportunities were even presented to Blitz."   (Id.).

Peerless' Production Request 9 seeks "[a]ll documents, ESI and things relating to, referencing, or identifying communications with any potential acquirer of Blitz."   (Doc. 62-8, p. 9).   Blitz acknowledges that there were potential acquirers of Blitz other than West and that Cantor Fitzgerald presented other "opportunities" to Blitz (Doc. 70, p. 12).   Regardless of whether a formal offer was made, documents and ESI relating to, referencing, or identifying communications with these potential acquirers falls within the scope of Peerless' Production Request 9.   The documents also fall within the scope of Peerless' Production Request 15, which seeks documents related to Cantor Fitzgerald's work performed on Blitz' behalf (Doc. 62-8, p. 9).   Peerless' motion to compel response to Production Request 9 is therefore **GRANTED**.   Blitz is **ORDERED** to further respond to Peerless' Production Request 9 by producing all documents in its possession or control which relate to communications with any potential acquirer of Blitz.   Production shall be made within ten (10) days from the rendition of this Order.

In the related case of Blitz Telecom Consulting, LLC v. Peerless, M.D. FLA. Case No. 6:14-cv-307- Orl-40GJK (the "307 Case"), Peerless requested the production of all financial statements prepared by Blitz or on its behalf from January 1, 2010 to the present (Doc. 60, p. 12 in the 307 Case).   Blitz objected and the dispute was presented to the Court (Id.).   On May 14, 2015, the Court ordered Blitz to produce the financial statements by May 21, 2015 (Id., at p. 16).   On June 2, 2015, Blitz produced five pages, each representing a year of its business from 2010 to 2014 (Doc. 62-15).   Peerless argues that Blitz failed to comply with the Court's order in the 307 Case because the financial

statements it produced contain only total income, total expense, and net income figures (Doc. 62, pp. 8-9).   Peerless complains that Blitz has refused to produce anything more detailed and Local Access has refused to produce any financial data (Id.).

As a threshold matter, if either plaintiff violated an Order in the 307 Case, then that should be the subject of a motion filed in that case.   Blitz represents that the financial statements it has produced are all that it has.   It states that it has never had the need for detailed financial statements because it is not a publicly traded company, it has never applied for a loan, it has no lenders, and it does not retain accountants to prepare audited statements (Doc. 70, p. 6).   Instead, Blitz says that it is a limited liability company with only three members, all of whom are active in the business (Id.).   The Court accepts these representations and, based upon them, Peerless' motion for relief based upon Blitz' alleged failure to produce more detailed financial statements is **DENIED**.

Local Access states that it is a small, limited liability company with only two members who are both active in the business (Doc. 71, pp. 2-3).   It says it has no lenders, has never applied for a loan, does not employ accountants to prepare financial statements, has no need for financial statements, and does not have financial statements (Id.).   Nevertheless, Local Access was willing to prepare and produce statements similar to the statements produced by Blitz, but did not do so once Peerless filed its motion to compel (Id.).   The Court accepts Local Access' representations and, based upon them, Peerless' motion for relief based upon Local Access' alleged failure to produce more detailed financial statements is **DENIED**.

Plaintiffs have disclosed an expert report prepared by Stephen Gaines which identifies the documents he reviewed, including "Blitz Telecom Presentation by Cantor Fitzgerald (2012)," "Cantor Blitz Response Sheet," "Elements of Valuation of Blitz,"

"Combined OpenSIPS Active Calls data–by day and by week (May 2015)," "Intercarrier Compensation Reform Timeline," and "Breakout of Revenue Categories (2012-June 2015)."   (Doc. 62-5, p. 14).   Peerless argues that these documents are responsive to its requests for production and were not produced until the day after it received Gaines' report (Doc. 62, p. 12).   Peerless also argues that the following statement in Gaines' report is proof that Plaintiffs intend to provide additional information to Gaines:

> I will get a breakdown for you than [sic] shows what bucket and rate applies for Blitz traffic today versus Summer 2012. The value of the company is almost as simple as a spreadsheet that breaks it down why you put in the total minutes.   I have to update it, but I will have it to you the first of next week.

(Id. at pp. 12-13).   Based upon these alleged discovery violations, Peerless contends that Gaines' report should be stricken (Id. at pp. 14-18).

Blitz characterizes this part of Peerless' motion as "not true and [ ] just another blatant misrepresentation by Peerless."   (Doc. 70, p. 13).   Gaines' report lists twelve documents he relied on to formulate his opinions (Doc. 62-5, p. 14).   Per Blitz, Peerless is erroneously contending that "Blitz Telecom Presentation by Cantor Fitzgerald," "Cantor Blitz Response Sheet," "Elements of Valuation of Blitz," "Combined OpenSIPS Active Calls data - by day and by week," "Intercarrier Compensation Reform Timeline," and "Breakout of Revenue Categories" were not produced during discovery (Doc. 70, p. 13). Blitz represents that the "Blitz Telecom Presentation by Cantor Fitzgerald" was created in July 2015 by deleting slides from a slide presentation produced during discovery (Id., Exhibit J).   Blitz further represents that the remaining documents were created on July 18, 2015, to assist Gaines in preparing his report and were produced to Peerless on July 21, 2015, i.e., the day after Gaines' report was produced, because Gaines inadvertently

failed to attach them to his report (Id. at p. 14).   Blitz also contends, and the Court

agrees, that Peerless failed to address the "Combined OpenSIPS Active Calls data – by

day and by week" and "Intercarrier Compensation Reform Timeline" in its "meet and

confer letter" of July 22, 2015 (Doc. 62-26).

It appears that Peerless has all of the documents Gaines references in his report.

Peerless argues that it "is entitled to the underlying data to make its own judgments and

calculations."   (Doc. 62, p. 14).   Peerless asks "Where are the profit and loss

statements, the general ledgers, the balance sheets, the statements of retained earnings

and cash flow, the income statements, the projections, etc.?"   (Id.).   As discussed *supra*,

the Court is satisfied that Plaintiffs have produced all of the financial statements in their

possession.   As to Peerless' argument that they are entitled to the data underlying the

financial statements, Peerless has failed to connect its argument to any particular

discovery request, and it is not immediately apparent from a review of Peerless' requests

that the information was requested.   This part of Peerless' motion is therefore **DENIED**.

On July 9, 2015, Peerless issued a notice of taking a FED. R. CIV. P. 30(b)(6)

deposition of Blitz (Doc. 62-12).   The notice includes a request for the production of 10

categories of documents (Id. at pp. 7-8).   In a letter dated July 23, 2015, Blitz made

multiple objections to the deposition notice (Doc. 62-13).   Peerless argues that Plaintiffs

have not produced all of the requested documents (Doc. 62, pp. 7-8).   But, Peerless'

motion to compel was filed in advance of the deposition and only after the motion was

filed did Peerless respond to Blitz' objections (Doc. 70-3).   The Court is persuaded by

Blitz' evidence and arguments that Peerless did not satisfy the meet and confer

requirements of Local Rule 3.01(g) before filing the motion to compel the documents

listed in its Rule 30(b)(6) deposition notice.   This part of Peerless' motion is therefore **DENIED**.

Finally, Peerless seeks an extension of time to produce an expert report on Blitz' present value and value in 2012 (Doc. 62, pp. 22-23).   Peerless represents that it cannot provide an expert report until the requested documents are produced.   The motion to compel is being **DENIED** except to the extent that Blitz has documents relating to potential acquirers other than West.   Whether such documents are in Blitz' possession or control is unknown.   Regardless, the Court finds that Peerless has not shown good cause for the requested extension because it has not provided facts to support the conclusion that it cannot produce its expert report without these documents.   See FED. R. CIV. P. 16(b)(4).   Lastly, when the Court extended the deadline for Peerless to disclose its expert reports to August 3, 2015, it said there "will be no further extensions of deadlines of any kind."   (Docs. 55, 56).   For these reasons, the motion for an extension of time is **DENIED**.

**DONE** and **ORDERED** in Orlando, Florida on September 25, 2015.

THOMAS B. SMITH
United States Magistrate Judge

Copies furnished to Counsel of Record