IN THE UNITED STATE DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION


LOCAL ACCESS, LLC &
BLITZ TELECOM CONSULTING, LLC.,

     Plaintiffs,

                                CASE NO.: 6:14-CV-399-ORL-40TBS

v.

PEERLESS NETWORK, INC.,

     Defendant.

_____/

## PLAINTIFFS' OBJECTION TO NOVEMBER 12, 2015 ORDER ON STATEMENT OF POSITION ON ORDERS AND STIPULATIONS OF RECORD AT THE OCTOBER 14, 2015 HEARING

Plaintiffs, LOCAL ACCESS, LLC ("Local Access") and BLITZ TELECOM CONSULTING, LLC ("Blitz"), by and through their undersigned counsel, and pursuant to Federal Rule of Civil Procedure 72, hereby objects to the Order entered by the Magistrate Judge at a telephonic hearing on November 12, 2015 regarding the Statement of Position on Orders and Stipulations of Record at the October 14, 2015 Hearing, and requests review of the same by the District Court Judge.  In support thereof, Plaintiffs state:

## I.    PRELIMINARY STATEMENT

This is an action for breach of contract, tortuous interference with a business relationship, and fraudulent inducement. [Doc. 1]   Throughout the course of this litigation, the Defendant, PEERLESS NETWORK, INC. ("Peerless") has systematically concealed, obfuscated and refused to provide information that is solely in its possession

that Plaintiffs need to present their case.  Plaintiffs were concerned that this conduct would continue during the continued deposition of Douglass Lee, a corporate representative of Peerless.  In advance of the November 12, 2015 deposition of Mr. Lee, the Plaintiffs filed a Statement of Position [Doc. 153] expressing their concern that Mr. Lee would not appear at his deposition with the requisite information necessary to fully and completely respond to the topics identified in the notice of taking deposition served pursuant to Fed. R. Civ. P. 30(b)(6).  A telephonic hearing was held by Magistrate Judge Thomas B. Smith on this issue on November 6, 2015 [Doc. 157].  At that time, Judge Smith ruled that the Plaintiffs' concerns were premature, but indicated he would be available on November 12, 2015 if issues arose at the deposition.

As the Plaintiffs expected, Peerless continued its behavior of concealing, obfuscating and refusing to provide information during the November 12, 2015 deposition of Mr. Lee.  While Mr. Lee appeared for deposition, he was not in possession of the information known or reasonably in the possession of Peerless to be able to address the designated topics.  During a break at the deposition, the parties had a telephonic hearing with Magistrate Smith.  During that hearing, Magistrate Smith ruled that Peerless did not have to produce any backup documentation or information that Mr. Lee used to create a summary of revenue billed and revenue received during the time frame set forth in the applicable topics.  After this ruling, further examination of Mr. Lee revealed that the information in his summaries was inaccurate or otherwise unresponsive to the topics identified.  Accordingly, the Plaintiffs respectfully request that this Court modify or set aside the Order holding that Peerless did not have to produce any backup documentation or information relied on or utilized by Mr. Lee in creating his summaries, and require that

either all of the backup documentation and information be produced, or that Mr. Lee be compelled to attend a continued deposition on the topics at issue with such backup documentation and information in his possession so he can appropriately testify about the information known or reasonably available to Peerless on these topics.

## II.   STATEMENT OF FACTS

On September 27, 2015, Plaintiffs proceeded to take the deposition of Peerless's corporate representative in Chicago, Illinois, pursuant to Fed. R. Civ. P. 30(b)(6).  At that deposition, Peerless designated its Chief Financial Officer, Douglass Lee, to provide testimony on the following two topics set forth in Schedule A of the Notice of Taking Deposition of Peerless's Corporate Representative:

> 5.     The amount of traffic, measured in MOU [Minutes of Use] and revenue billed, revenue received and/or collected, generated by Blitz on the Peerless networks for each month during the entire term of the IP Control Agreement that is attached to Peerless' Answer and Counterclaim as Exhibit 1.
>
> 6.     The amount of traffic, measured in MOU [Minutes of Use] and revenue billed, revenue received and/or collected on the Peerless networks for each month during the entire term of the IP Control Agreement that is attached to Peerless' Answer and Counterclaim as Exhibit 1.

*See* Notice of Taking Deposition of Peerless's Corporate Representative Pursuant to Fed. R. Civ. P. 30(B)(6), attached hereto as **Exhibit 1**.  However, Mr. Lee's testimony during that deposition revealed that he did not have knowledge of the information necessary to fully and completely respond to these topics. *See* Plaintiffs' Supplemental Motion to Compel Corporate Representative Deposition Following Discovery Deadline [Doc. 94].

A hearing was held on October 14, 2015 before Magistrate Thomas B. Smith on several matters, including Plaintiffs' Supplemental Motion to Compel Corporate

Representative Deposition Following Discovery Deadline.   During a recess of that hearing, the parties made a stipulation regarding Peerless's corporate representative for topics 5 and 6.   That stipulation was reflected on the record in open court as follows:

> As it relates to the motion to compel additional testimony for the corporate representative, we have a stipulation.   As it relates to Requests 5 and 6, Peerless Network will within two weeks provide us with an affidavit and hopefully sufficient to give us information that would satisfy our Request Nos. 5 and 6.   Should we not be satisfied with the content of the affidavit, Peerless will provide its chief financial officer, Douglas [sic] Lee, for testimony at a deposition to be scheduled at the time that reconvene the depositions anyway to take the depositions of two witnesses who were unavailable otherwise when we did take the depositions back in September.

*See* Transcript of 10/14/15 Hearing [Doc. 149], p.143, ll.6-19.  Following the hearing, the parties agreed to schedule depositions of witnesses, including Mr. Lee as Peerless's corporate representative relative to topics 5 and 6, to take place on November 4 and 5, 2015, in Chicago.  However, as Peerless had not provided the affidavit pursuant to the stipulation by November 2, 2015, the parties agreed to reschedule the depositions to take place on November 11 and 12, 2015, with Mr. Lee's deposition scheduled for November 12th.

On the evening of November 3, 2015, Peerless produced a declaration of Douglass Lee, with a spreadsheet attached relative to topics 5 & 6 of Schedule A to the Notice of Taking Corporate Representative Deposition.  The declaration of Douglass Lee and the attached spreadsheets (appropriately redacted) are attached hereto as **Exhibit 2**.

Following the receipt of the declaration and the attached spreadsheets, the Plaintiffs requested a hearing with Magistrate Smith regarding the imminent deposition of Mr. Lee.  The Plaintiffs filed a Statement of Position on November 5, 2015, outlining

their concerns with the declaration and attached spreadsheets. *See* Statement of Position on Orders and Stipulations of Record at the October 14, 2015 Hearing [Doc. 153].  In that Statement of Position, the Plaintiffs indicated that they were unsure whether the figures representing "revenue collected" with respect to either topic 5 or topic 6 included the total amount of money actually received, or whether such figures only represented the portions of such payments that Peerless believes were realized because some of the payments may be subject to later repayment, refund or clawback.  Consequently, the Plaintiffs were of the belief that the declaration and spreadsheet were unresponsive, and requested to be able to review the documents and other data that was reviewed, summarized or otherwise utilized to prepare the declaration and spreadsheet to give meaning to the same.

Magistrate Smith held a telephonic hearing on the afternoon of November 6, 2015 on the issues raised in the Statement of Position.  At that time, the Plaintiffs contended that they needed to know the actual amounts of money that were billed and collected on Blitz traffic and the actual amounts of money that were billed and collected by Peerless as a whole in order to establish Peerless's motivation for the fraudulent inducement claim set forth in the Complaint.  The Plaintiffs expressed their concern that Mr. Lee would not have any of the backup documentation to support the spreadsheets at the upcoming deposition, and that they would once again be left without the information that they needed to present their claims.  Accordingly, the Plaintiffs requested the factual backup for the numbers presented on the spreadsheets.

Magistrate Smith ruled that the Plaintiffs concerns were premature, but that he would be available for a hearing on November 12 if the Plaintiffs needed to revisit this

issue during the deposition of Mr. Lee.  Magistrate Smith recognized that the Plaintiffs would be asking Mr. Lee about how the spreadsheets were created and that they would be seeking the backup for the same.

On November 12, 2015, the Plaintiffs reconvened the deposition of Mr. Lee as the corporate representative of Peerless with respect to topics 5 and 6.  As expected, Mr. Lee did not have any specific information regarding the backup for the numbers on the spreadsheets.  A telephonic hearing was held with Magistrate Smith during a recess in the deposition.  However, Magistrate Smith denied the Plaintiffs' request that the backup information be produced, ruling as follows:

> I've looked at the transcript from the hearing on October the 14th.  I've looked at the 30(b)(6) notice.  I've looked at the notes that I kept from our last hearing, and this is what I find: The issue of what was or was not within the scope of categories 5 and 6 of the 30(b)(6) notice was crystalized at the latest on August 27 of 2015 when Mr. Lee was being deposed and the attorney, whose name escapes me who was conducting the deposition, argued that Mr. Lee  was not prepared to answer the questions.

> We then proceed to the hearing on October the 14th; and at that hearing an agreement is made outside the courtroom; and the agreement that is placed on the record is that Peerless is going to provide an affidavit, and if the affidavit is insufficient to answer all of Blitz's questions, that Blitz will then take a deposition of Mr. Lee in Chicago when it intended to be out there anyway took to take, I think, two other short depositions.

> Regrettably the scope issue was not addressed by stipulation on the record on October the 14th.  Then we reconvene for the last hearing that we had at which Mr. Myers argues that he's afraid that when he gets to Chicago that Peerless is not going to provide him with the information that he is seeking, which is the backup for the numbers on the spread sheet.

> My notes of that hearing end with a note to myself that Peerless knows that Blitz is going to ask Mr. Lee how the spread sheets were prepared and why the numbers differ.  I take from our earlier

conversation that those questions have been asked; and, as I understand it, Mr. Lee has testified to how the numbers were created but that he doesn't have any of the hard, factual information to provide in addition to that testimony.

At this time I'm going to find that Peerless does not have to produce the backup because that issue should have been addressed either in the stipulation placed on the record on October the 14th or the issue should have been argued so that the court would have had the opportunity to decide the issue before today.

*See* Transcript of November 12, 2015 hearing, pp.15-17, attached hereto as **Exhibit 3**.

Following that ruling, the Plaintiffs continued the examination of Mr. Lee. Further examination revealed that the spreadsheet that had been produced was inaccurate or otherwise unresponsive to the topics identified.[1]   In the absence of any backup documentation or information, either produced or in Mr. Lee's possession during the deposition, Mr. Lee provided insufficient testimony on topics 5 and 6, as illustrated by the following:

## ISSUE 1: Topic 5 – Calculation of Revenue Collected on Blitz Traffic

Mr. Lee testified that the revenue from Blitz traffic was reduced by disputes from carriers, but he could not testify whether certain carriers had identified disputes and he could not testify whether such disputes applied to any customers other than Blitz. Accordingly, there is no way to know what any "disputed" amounts represented, and no way to know if the total amount of the disputes were all applied against Blitz on the spreadsheet or if those amounts were divided between Blitz and other Peerless customers:

---

[1] Plaintiffs have filed a Renewed Motion to Compel Corporate Representative Deposition Following Discovery Deadline simultaneously herewith, in an attempt to secure the information that Mr. Lee was unable to provide testimony about during the November 12, 2015 deposition.

104[2]

14    Q.  Let's move over then to revenue
15  collected estimate.  And I understand, I read
16  your testimony from before about how that has to
17  be estimated because you get one check based on
18  an invoice, correct?
19    A.  On an invoice, yes.
20    Q.  On an invoice you get one check; and if
21  it's not for the 100 percent amount, then you
22  don't know particularly what part was not paid;
23  is that fair to say?
24    A.  Correct, unless they have told us for

105

1  some reason that they weren't, and then we would
2  make the application of the payment based on
3  disputes that they had made.
4    Q.  Do you have any documentation or does
5  Peerless have any documentation from any of the
6  carriers that would pay your invoices that says
7  that Blitz traffic was not paid for?
* * *
24    A.  So we have documentation from [Carrier 1] and

106

1  [Carrier 2] that they will not pay on two-stage
2  dialing.
3    Q.  Any two-stage dialing?
* * *
7    A.  Yeah, I believe so.
* * *
15    Q.  Other than [Carrier 1], has anyone else
16  provided you with any indication that any Blitz
17  traffic was not being paid for?
18    A.  Once again, for two-stage dialing,
19  not -- they didn't call it specifically,
20  customers per se to my knowledge, but they said
21  for two-stage dialing.  [Carrier 2] also has brought
22  up disputes.

---

[2]  All excerpts quoted herein are from the continued deposition of Douglass Lee, November 12, 2015.
The undersigned counsel represents that the excerpts have been copied verbatim from the electronic
transcript, except for any text contained within brackets.  All bold emphasis has been added.  The bracketed
language has been substituted so as not to disclose any information that Peerless considers confidential, and
the bracketed language is not determinative of any issues raised herein.  A copy of the transcript of the
continued deposition of Douglass Lee is attached hereto as **Exhibit 4**, with redactions consistent with
Peerless's claims of confidentiality in this matter.  Should either the Court or Peerless require that the
unredacted transcript be filed, the Plaintiffs will work with Peerless to determine if the same needs to be
filed under seal.

\* \* \*

107

1    A.  Correct.
2    **Q.  Anyone else?**
3    **A.  [Carrier 3] or [Carrier 4] may have.  I**
4  **can't recall exactly.  I'd have to look.**

\* \* \*

15     Q.  You're' saying that Blitz uses
16  two-stage dialing; and you then further
17  indicated that [Carrier 1], [Carrier 2], perhaps [Carrier 3]
18  and perhaps [Carrier 4] don't pay for two-stage
19  dialing.  So I'm saying does that apply to
20  anyone other than Blitz?
21     A.  Oh, anybody that would be a
22  two-stage -- who has two-stage dialing on our --
23  yes.
24     **Q.  And there are others other than Blitz**

108

1  **that have two-stage dialing?**
2    **A.  I'm not sure.**

## ISSUE 2: Topic 5 – Calculation of Revenue Collected on Blitz Traffic

Mr. Lee testified that he did not have his calculations with him and could not testify to

what the amount of revenue was before the application of any disputes or claw-backs.

While the Plaintiffs understand that Peerless wants to define revenue on Blitz's traffic,

Peerless's methodology must be transparent.   Peerless has failed to provide the

information known or reasonably in the possession of Peerless that would allow the

Plaintiffs to understand, duplicate, confirm or challenge Peerless's methodology or

calculations.

109

19     In some cases, as you alluded to
20  earlier, if somebody doesn't pay a whole bill
21  and doesn't give me a reason why right away, we
22  apply the payment as best we can to the
23  services.
24     Q.  Okay.  How?

110

1    A.   Basically we just apply it kind of like
2   peanut butter until we get a dispute; and if the
3   dispute is brought in and they say this is
4   specific for end-office termination, then I
5   would say, okay, if your dispute is for that,
6   for two-stage dialing, then I amend the way the
7   payment was applied accordingly.  If they're
8   telling me, no, none of that payment should have
9   been applied to this call type, then I take away
10   the cash application of it.
11    Q.   When you were calculating the revenue
12   collected estimate, did you take into account
13   any of these disputes or any claw-backs?

* * *

19    A.   I'm sorry.  For the two that I had
20   referred to for [Carrier 1] and [Carrier 2] that we have
21   documentation that they said they are not paying
22   us on two-stage dialing, we did.  We made the
23   specific application to two-stage dialing for
24   there's, and for the others I think it was just

111

1   whatever the average revenue collected was on --
2   as cross all of our customers.
3    Q.   As you sit here today, are you able to
4   testify as to what the revenue was before the
5   application of any disputes or claw-backs?
* * *
12    A.   It is in column C.
13    Q.   That's what was billed?
14    A.   Yeah.
15    Q.   Okay.  There are times that payments
16   were made and then later dollars were then, say,
17   repaid back or credited back?
* * *
21    A.   They weren't credited back.  They
22   were -- the application of those dollars that
23   were received were moved from one bucket to
24   another depending on what the application should

112

1   have been.  If they paid me a dollar a month ago
2   and then this month say, hey, that dollar should
3   have been 50 cents for end-office origination
4   and tandem origination, none of it should have

5  been for end-office term, I got to go back and
6  move.  It's accounting.  It's timing and it's
7  matching.
8  **Q.  Do you have any of the calculations of**
9  **that with you?**
10    A.  I do not.
11   **Q.   Are you able to testify as to any of**
12  **the calculations?**
13    A.  The calculations, yes.  To the exact
14  numbers --
15   **Q.  Yes, to the --**
16   A.  -- no.
17   **Q.  -- to exact numbers.**
18   A.  No.

## ISSUE 3: Topic 5 – Calculation of Revenue Collected on Blitz Traffic

Mr. Lee testified that he did not know if Peerless had paid back any disputed amounts

that were deducted from the amounts of Blitz collected revenue on the spreadsheet.  This

calls into question the accuracy of the numbers on the spreadsheet with respect to

whether Peerless reduced the amounts of Blitz collected revenue by amounts that it has

not had to pay back to carriers, and may never pay back to carriers.  Consequently, once

again, Peerless has failed to provide the information known or reasonably in the

possession of Peerless that would allow the Plaintiffs to understand, duplicate, confirm or

challenge Peerless's methodology or calculations.

                    127
1   Q.  I asked you about claw-backs, and you
2   said one could be a carrier going back and
3   reclaiming moneys paid.
4    A.  If there was a dispute that they lodged
5   and that was in regards to payments that they
6   already had made.
7    **Q.  Let me ask this question:  Has Peerless**
8   **given back to all carriers any disputed money**
9   **that was paid to Peerless that they have**
10   **reclaimed back?**
* * *

14    **A.  I'm not sure.**
15    Q.   Who would know that?
16    A.   We would have to look into our
17    accounting system to see if there were moneys
18    paid back.
19    **Q.   Is it then possible then what is**
20    **reflected on Exhibit 2 may have been some**
21    **claw-backs for which a carrier has requested**
22    **money back but the money hasn't actually been**
23    **paid back?**
* * *

     128
3    **A.  I don't know.**
4    **Q.  It's possible?**
* * *

7    **A.  I don't know.**
* * *

20    **Q.   Conceptually though, if there are**
21    **dollars that have been requested back, you don't**
22    **know whether or not they've actually been paid**
23    **or not?**
24    **A.   Not from memory.**
     129
1    Q.   I appreciate that, and if we were
2    taking your deposition in your individual
3    capacity, it's not a memory test and I agree
4    with that; **but there's information at Peerless**
5    **that could answer that question; is that right?**
* * *

9    **A.  Probably.**
10    **Q.  So Peerless knows, you just don't?**
11    **A.  Correct.**

## <u>ISSUE 4: Topic 5 – Calculation of Revenue Collected on Blitz Traffic</u>

Mr. Lee testified that if Peerless was successful against a dispute, then the numbers on

the spreadsheet regarding revenue collected on Blitz traffic were potentially understated.

Without the backup documentation regarding how much was deducted from the revenue

collected on Blitz traffic and the nature of the disputes giving rise to the deductions, the

Plaintiffs cannot understand, duplicate, confirm or challenge Peerless's methodology or

calculations.   However, based on Mr. Lee's testimony, it is clear that the spreadsheet as

produced is not accurately responsive to topic 5.

132

15     Q.   I understand that.  Let me make sure I
16   got this straight though.  The two-stage dialing
17   disputed dollars are already removed from column
18   D; is that correct?

* * *

21     A.   Correct, that's a correct statement.
22     **Q.   So then if Peerless is successful with**
23   **regard to the dispute, turns out that the**
24   **dollars Peerless should have gotten then, then**

133

1   **that would result in the numbers in column D**
2   **being understated?**
3     A.   **Potentially.  To what degree, I'm not**
4   **sure.**

## ISSUE 5: Topic 5 – Calculation of Revenue Collected on Blitz Traffic

Mr. Lee testified that the spreadsheet was prepared with the assistance of counsel and he

was advised not to disclose communications with counsel in that regard.   Consequently,

Peerless's calculation methodology has been influenced by their attorneys and Peerless is

concealing the extent of such influence behind the attorney-client privilege.

133

5   **Q.   How did the document or the spread**
6   **sheet that has been attached as Exhibit 2 come**
7   **into being?**
8       **MS. JAMES:  I'm just going to counsel**
9   **you not to disclose any privileged**
10   **communications you might have had with counsel**;
11   but outside of that, you can go you ahead and
12   answer the question.
13   BY THE WITNESS:
14     A.   So Exhibit 2, correct?
15     Q.   Yes.
16     A.   So column A and column B and column C
17   would have been run from a database query on the
18   UQS database at Peerless.

19     Q.  Did you formulate that query?
20     A.  I did not.  Our IT department handles
21  that.
22     **Q.  Okay.  Did you advise the IT department**
23  **of what you needed?**
24     **A.  In conjunction with counsel, yes, to**
                        134
1  **answer an interrogatory[3] for this case**.
* * *
                        137
23     Q.  Okay.  That sounds like there was a lot
24  of work that went into column D.
                        138
1     A.  Yes, because, as I stated earlier,
2  carriers, when they pay us, don't necessarily
3  pay us by customer by phone number.
4     Q.  And it couldn't have been done by some
5  sort of an automated query to one database to
6  get that number?
7     A.  Not from a single database, no.
8     Q.  And did you do the calculations that
9  resulted in column D?
10     A.  Portions.  It was a little bit of an
11  assembly, so to speak.
12     **Q.  Did you do the final assembly?**
13     **A.  In conjunction with counsel, yes, to**
14  **make sure I was interpreting the interrogatory**
15  **properly.**

## ISSUE 6: Topic 5 – Calculation of Revenue Collected on Blitz Traffic

Mr. Lee testified that he did not consider whether the contract between Blitz and Peerless

allowed for reductions based on disputes or claw-backs, resulting in the possibility that

the spreadsheet did not accurately reflect revenue attributable to Blitz traffic.  Without the

backup documentation to reveal the nature of the reductions Mr. Lee made to the

amounts of revenue attributable to Blitz traffic, the spreadsheet is not accurately

responsive to topic 5.

---

[3] Mr. Lee erroneously interpreted the descriptions of topic 5 and 6 as interrogatories, and it was later clarified that when he used the word "interrogatory" he was referring to the descriptions of the topics at issue.  *See* Exhibit 3, p.143, l.24 through p.144, l.4.

150

15   Q.   So column D is net of any claw-backs or
16   disputes?
17      A.   Let me make sure.
18   Q.   In Exhibit 2.
19      A.   Yes.
20      **Q.   And, again, my question is is if the**
21   **contract between Blitz and Peerless did not**
22   **allow for subsequent reductions for disputes or**
23   **claw-backs, then column D would not accurately**
24   **reflect dollars that should be attributable to**

151

1   **Blitz?**
* * *
5      **A.   If the contract did not have any**
6   **language around collected revenue or disputes or**
7   **claw-backs, then it could be -- you could be**
8   **correct.**

## ISSUE 7 : Topic 6 – Calculation of Peerless Revenue Collected on Traffic

Mr. Lee testified that the revenue amounts on the spreadsheet regarding topic 6 included

revenue on products other than traffic.   This results in the revenue amounts being

artificially high.   This, in conjunction with the previous issues showing that the amount of

Peerless's revenue associated with Blitz traffic is artificially low, serves to improperly

reduce the percentage of Peerless's revenue associated with Blitz traffic so as to

intentionally minimize Peerless's motivation for the actions raised by the Plaintiffs

claims of fraudulent inducement and tortuous interference with a business relationship.

Moreover, based on Mr. Lee's testimony, it is clear that the spreadsheet as produced is

not accurately responsive to topic 6.

143

11   **Q.   Did you also say that the revenue in**
12   **column C included installations and other**
13   **nonrecurring charges?**
14      **A.   Yeah, it's all revenue for the company.**
15   Q.   Would nonrecurring charges be

16   considered traffic?

17      A.   It's associated with traffic.

18      Q.   I understand associated with traffic,

19   **but would nonrecurring charges be traffic?**

* * *

23      **A.   Not necessarily.**

24      Q.   Category six, I know you've been

                144

1   referring to it as an interrogatory.  It

2   actually was a category of the 30(b)(6)

3   deposition.

4      A.   My apologies.

5      Q.   That's okay.  It talks about or

6   actually specifically says, the total amount of

7   traffic measured in minutes of use and revenue

8   billed, revenue received and/or collected on the

9   Peerless networks for each month during the

10   entire term of the IP control agreement that is

11   attached to Peerless' answer and counterclaim as

12   Exhibit 1.

13         **If what's been attached to this**

14   **deposition as Exhibit 4 in the revenue column,**

15   **column C, includes nonrecurring charges, that**

16   **would be some charges that are over and above**

17   **what's been asked for with regard to traffic?**

* * *

21      **A.   They are not specifically traffic**

22   **related.**

23      **Q.   But they are contained in column C?**

24      **A.   Yes, we were -- we read the request as**

                145

1   **being for all revenue that the company billed.**

## ISSUE 8: Topic 6 – Calculation of Peerless Revenue Collected on Traffic

Mr. Lee testified that the revenue collected amounts on the spreadsheet regarding topic 6

were not attributed to the amounts that were billed during the same period, although

Peerless has the ability to do so and does so fairly often.     Further, as the estimated

revenue amounts relating to Blitz traffic was correlated with the estimated billings, the

two spreadsheets use different methodologies and are of limited use for purposes of

comparison.  Without the backup documentation, the Plaintiffs are unable to correlate the

income received with the amounts billed, and again, Peerless has failed to provide the

information known or reasonably in the possession of Peerless that would allow the

Plaintiffs to understand, duplicate, confirm or challenge Peerless's methodology or

calculations.

> 146
> 8   Q.   Okay.  When you do other calculations
> 9   addressing your percentage of collections, do
> 10  you compare revenue dollars that have come in
> 11  the door to bills that have gone out the door?
> 12    A.  I believe we do.
> 13    Q.  So sounds like you, to me, like you
> 14  testified that you do these collection
> 15  percentages fairly often, right?
> 16    A.  Yes.
> 17    **Q.  That wasn't done on Exhibit 5,**
> 18  **attributing the dollars or comparing the dollars**
> 19  **that go in the door to the invoices that went**
> 20  **out the door?**
> 21      MS. JAMES:  Exhibit 4?
> 22      MR. MYERS:  Excuse me, Exhibit 4.  Thank
> 23  you, Katie.
> * * *
> 147
> 4   **A.  They might not exactly line up.**
> * * *
> 20    **Q.  Just so I know, they're not correlated**
> 21  **to each other where you could divide the revenue**
> 22  **collected by the revenue to come up with some**
> 23  **sort of a collection percentage because they're**
> 24  **not tied that way?**
> 148
> 1   **A.  Not in this exhibit.**

## III.   <u>ARGUMENT</u>

A district court judge can modify or set aside any part of a magistrate judge's

order that is found to be clearly erroneous or contrary to law.  *See*, Fed. R. Civ. P. 72(a);

*see also*, *Ray v. Cutter Labs., Div. of Miles, Inc.*, 746 F. Supp. 86, 87 (M.D. Fla. 1990); and 28 U.S.C. § 636(b)(1)(A).  The magistrate judge's order was clearly erroneous and contrary to law, as it failed to require Peerless's corporate representative to provide testimony in accordance with Rule 30(b)(6).

The parties entered into a stipulation on the Supplemental Motion to Compel Corporate Representative Deposition that Peerless was to provide an affidavit containing information relating to topics 5 and 6, and if the Plaintiffs were not satisfied with the content of the affidavit, Peerless would provide its chief financial officer, Douglass Lee, for testimony at deposition.  The Plaintiffs were not satisfied with the declaration and spreadsheets produced by Peerless and they scheduled Mr. Lee for deposition as Peerless's corporate representative.  However, Mr. Lee was not prepared at that deposition to testify as to the "information known or reasonably available to" Peerless on topics 5 and 6. *See*, Fed. R. Civ. P. 30(b)(6).  Rather, his testimony provided no additional information than was included on the insufficient spreadsheets, other than to highlight how the spreadsheets were inadequate and unresponsive.  The Plaintiffs are still left without the information they sought, *viz.*, the information known or reasonably available to Peerless on topics 5 and 6.

During the hearing held at the time of the deposition, Magistrate Smith was advised that Mr. Lee was unable to testify as to the numbers or the data used to create the numbers on the spreadsheet, and therefore the Plaintiffs were unable to verify, challenge or even meaningfully explore the numbers on the spreadsheet. *See* **Exhibit 3**, pp.4-5. Further, the Plaintiffs explained:

Items 5 and 6 of the Schedule A very specifically talk about the amount of traffic measured in minutes and measured in revenue billed, revenue received and/or collected generated by Blitz on the Peerless network.  So I was trying to get to what those numbers are, how they are being calculated, what dollars came in the door, what reductions were made to them, what percentages were multiplied by them; and Mr. Lee is unable to provide us with that information; and that's why we're on the phone here this morning, your Honor, because I was concerned about this last week and precisely what I was concerned about is what has happened here.

See **Exhibit 3**, p.6.

Based on the stipulation, the requirements of Rule 30(b)(6), and Mr. Lee's inability to testify as to the information known or reasonably available to Peerless on topics 5 and 6, Peerless should have been compelled to either provide all of the backup documentation and information used in creating the spreadsheets.  Alternatively, the deposition should have been suspended and reconvened with Mr. Lee being compelled to have all of the backup documentation and information used in creating the spreadsheets in his possession, so he could appropriately testify as to the information known or reasonably available to Peerless on topics 5 and 6.  No other reasonable interpretation of the stipulation is possible.  It would defy logic and reason for anyone to take the position that if the Plaintiffs were not satisfied with the affidavit, that Peerless would provide a witness who would only testify about the unsatisfactory numbers that were provided.  The stipulation was to provide a corporate representative.  Under Rule 30(b)(6), that corporate representative should have been able to testify about the numbers behind the numbers summarized on the spreadsheet, the starting numbers for each period, the specific amounts of adjustments or manipulations made to those numbers, and why.

Accordingly, the order that allowed Mr. Lee to testify without either producing the backup documents and information, or without even having the benefit of such documents and information available to him was clearly erroneous and contrary to law.

In *QBE Insurance Corp. v. Jorda Enterprises, Inc.*, 277 F.R.D. 676 (S.D. Fla. 2012), the U.S. District Court for the Southern District of Florida set forth its "de facto Bible" governing organizational depositions. The following examples from these requirements are directly applicable to the instant issue:

> 7. A corporation has an affirmative duty to provide a witness who is able to provide binding answers on behalf of the corporation.
>
> 11. Although the rule is not designed to be a memory contest, the corporation has a duty to make a good faith, conscientious effort to designate appropriate persons and to prepare them to testify fully and non-evasively about the subjects.
>
> 16. In other words, a corporation is expected to create an appropriate witness or witnesses from information reasonably available to it if necessary.
>
> 17. As a corollary to the corporation's duty to designate and prepare a witness, it must perform a reasonable inquiry for information that is reasonably available to it.

*Id.* at 688-89 (citations omitted).

In order to comply with these requirements, Peerless's corporate representative needed to have all of the documents and information available to him to be able to testify about the information known or reasonably available to Peerless on topics 5 and 6. The magistrate was advised that Mr. Lee did not have any such documentation or information in his possession, and therefore he was unable to properly testify as a corporate representative. Accordingly, the order holding that Peerless did not have to produce any of the backup documentation or information which would have allowed a meaningful

examination of Peerless's corporate representative was clearly erroneous and contrary to law.

## IV.   **CONLCLUSION**

Peerless has repeatedly withheld the information that the Plaintiffs have requested on topics 5 and 6.  To date, it has produced a spreadsheet with no backup documentation, and no witness who can testify as to the specific underlying data used to create the same. This has been done to intentionally prevent the Plaintiffs from challenging the numbers presented by Peerless.  Moreover, Mr. Lee's testimony demonstrates that the numbers on the spreadsheet are neither accurate nor responsive to the topics.  The November 12, 2015 Order has allowed Peerless to continue to conceal and obfuscate this information.

Accordingly, the Plaintiffs respectfully request that this Court enter an Order:

a. setting aside the Order issued by the magistrate judge on November 12, 2015;

b. ordering that Peerless produce all backup documentation supporting the amounts reflected on the spreadsheets, including: billing records; records of payments received; documentation regarding amounts of disputes and the bases for the same; documentation regarding the application of deductions for disputes; documentation regarding whether Peerless was ever divested of funds as a result of such disputes; documentation of the amounts deducted for disputes that Peerless continues to contest, and the status of such disputes; and any other raw data that was used or was otherwise factored in to the spreadsheets such that the Plaintiffs could recreate the same by applying Peerless's methodology to the data; *and additionally*, compelling Peerless to provide corporate designees to appear for

depositions in Orlando Florida with information sufficient to provide full and complete responses to topics 5 and 6, and who can fully explain the details of the calculations and methodologies employed in creating the spreadsheets Peerless has produced, and who can provide detailed testimony regarding the specific amounts that were billed for traffic, the specific payments that were received correlated to the amounts billed during the same period, the specific amounts that were deducted from such received payments, the reasons for such deductions, whether such deductions were for amounts that Peerless was ever divested of, whether the deductions were applied just to Blitz or to other customers (and the reasons for such applications), the amount of deductions applied to Blitz that Peerless is disputing with other carriers and the status of such disputes, and all of the factors that influenced the calculations; and

    c.  Granting such other relief as this Court deems just and equitable under the circumstances.

### LOCAL RULE 3.01(g) CERTIFICATION

The undersigned counsel hereby certifies that he personally conferred with counsel for Peerless regarding the issues raised herein, but counsel for Peerless did not agree with the relief sought herein.  However, in its response to this motion, Peerless indicated that it might agree to provide some additional information, but not the scope of the information requested herein.

                                           */s/ Ernest J. Myers*
                                           **ERNEST J. MYERS, ESQUIRE**
                                         Florida Bar No.: 947350

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on the ___**26th**___ day of ___**November**___, 2015, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to: Henry T. Kelley, Esq. (hkelley@kelleydrye.com), Matthew C. Luzadder, Esq. (mluzadder@kelleydrye.com), Michael R. Dover, Esq. (mdover@kelleydrye.com), KELLEY DRYE & WARREN, LLP, 333 W. Wacker Drive, Suite 2600, Chicago, IL   60606; and Ronnie J. Bitman, Esq. (rbitman@pearsonbitman.com), PEARSON BITMAN, LLP, 485 N. Keller Road, Suite 401, Maitland, FL  32751.  I FURTHER CERTIFY that I advised counsel for Defendant to file a similar 1-2 page statement of position on this issue.

 */s/ Ernest J. Myers*
**ERNEST J. MYERS, ESQUIRE**
Florida Bar No.: 947350
Email:  emyers@marcusmyerslaw.com
MARCUS & MYERS, P.A.
1515 Park Center Drive, Suite 2G
Orlando, Florida 32835
Tel:    407-447-2550 / Fax:   407-447-2551
Counsel for Plaintiffs, Local Access, LLC
and Blitz Telecom Consulting, LLC