IN THE UNITED STATE DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

LOCAL ACCESS, LLC &
BLITZ TELECOM CONSULTING, LLC.,

     Plaintiffs,

                              CASE NO.: 6:14-CV-399-ORL-40TBS

v.

PEERLESS NETWORK, INC.,

     Defendant.

_____/

## PLAINTIFFS' RENEWED MOTION TO COMPEL CORPORATE REPRESENTATIVE DEPOSITION FOLLOWING DISCOVERY DEADLINE

Plaintiffs, LOCAL ACCESS, LLC ("Local Access") and BLITZ TELECOM CONSULTING, LLC ("Blitz"), by and through their undersigned counsel, and pursuant to Federal Rules of Civil Procedure 37(a)(2)(B)(ii) and 37(a)(2)(C) hereby renew their motion for an Order authorizing the reopening of the deposition of the Defendant, Peerless Network, Inc. ("Peerless") and to compel Peerless to provide additional witnesses for examination and to produce documents and/or testimony.   In support thereof, Plaintiffs state:

## I.     PRELIMINARY STATEMENT

This is an action for breach of contract, tortuous interference with a business relationship, and fraudulent inducement. [Doc. 1]   Throughout the course of this litigation, Peerless has systematically concealed, obfuscated and refused to provide information that is solely in its possession that Plaintiffs need to present their case. Peerless continued this course of action during the November 12, 2015 deposition of

Douglass Lee as its designated corporate representative.  While Mr. Lee appeared for deposition, he was not in possession of the information known or reasonably in the possession of Peerless, and examination revealed that the information he did have was inaccurate or otherwise unresponsive to the topics identified.

## II.   <u>STATEMENT OF FACTS</u>

On September 27, 2015, Plaintiffs proceeded to take the deposition of Peerless's corporate representative in Chicago, Illinois, pursuant to Fed. R. Civ. P. 30(b)(6).  At that deposition, Peerless designated its Chief Financial Officer, Douglass Lee, to provide testimony on the following two topics set forth in Schedule A of the Notice of Taking Deposition of Peerless's Corporate Representative:

> 5.     The amount of traffic, measured in MOU [Minutes of Use] and revenue billed, revenue received and/or collected, generated by Blitz on the Peerless networks for each month during the entire term of the IP Control Agreement that is attached to Peerless' Answer and Counterclaim as Exhibit 1.

> 6.     The amount of traffic, measured in MOU [Minutes of Use] and revenue billed, revenue received and/or collected on the Peerless networks for each month during the entire term of the IP Control Agreement that is attached to Peerless' Answer and Counterclaim as Exhibit 1.

*See* Notice of Taking Deposition of Peerless's Corporate Representative Pursuant to Fed. R. Civ. P. 30(B)(6), attached hereto as **Exhibit 1**.  However, Mr. Lee's testimony during that deposition revealed that he did not have knowledge of the information necessary to fully and completely respond to these topics. *See* Plaintiffs' Supplemental Motion to Compel Corporate Representative Deposition Following Discovery Deadline [Doc. 94].

A hearing was held on October 14, 2015 before Magistrate Thomas B. Smith on several matters, including Plaintiffs' Supplemental Motion to Compel Corporate

Representative Deposition Following Discovery Deadline.   During a recess of that

hearing, the parties made a stipulation regarding Peerless's corporate representative for

topics 5 and 6.  That stipulation was reflected on the record in open court as follows:

> As it relates to the motion to compel additional testimony for the
> corporate representative, we have a stipulation.   As it relates to
> Requests 5 and 6, Peerless Network will within two weeks provide us
> with an affidavit and hopefully sufficient to give us information that
> would satisfy our Request Nos. 5 and 6.   Should we not be satisfied
> with the content of the affidavit, Peerless will provide its chief financial
> officer, Douglas [sic] Lee, for testimony at a deposition to be scheduled
> at the time that reconvene the depositions anyway to take the
> depositions of two witnesses who were unavailable otherwise when we
> did take the depositions back in September.

*See* Transcript of 10/14/15 Hearing [Doc. 149], p.143, ll.6-19.  Following the hearing, the

parties agreed to schedule depositions of witnesses, including Mr. Lee as Peerless's

corporate representative relative to topics 5 & 6, to take place on November 4 and 5,

2015, in Chicago.  However, as Peerless had not provided the affidavit pursuant to the

stipulation by November 2, 2015, the parties agreed to reschedule the depositions to take

place on November 11 and 12, 2015, with Mr. Lee's deposition scheduled for November

12th.

On the evening of November 3, 2015, Peerless produced a declaration of

Douglass Lee, with a spreadsheet attached relative to topics 5 & 6 of Schedule A to the

Notice of Taking Corporate Representative Deposition.  The declaration of Douglass Lee

and the attached spreadsheets (appropriately redacted) are attached hereto as **Exhibit 2**.

Following the receipt of the declaration and the attached spreadsheets, the

Plaintiffs requested a hearing with Magistrate Smith regarding the imminent deposition

of Mr. Lee.  The Plaintiffs filed a Statement of Position on November 5, 2015, outlining

their concerns with the declaration and attached spreadsheets. *See* Statement of Position on Orders and Stipulations of Record at the October 14, 2015 Hearing [Doc. 153]. In that Statement of Position, the Plaintiffs indicated that they were unsure whether the figures representing "revenue collected" with respect to either topic 5 or topic 6 included the total amount of money actually received, or whether such figures only represented the portions of such payments that Peerless believes were realized because some of the payments may be subject to later repayment, refund or clawback. Consequently, the Plaintiffs were of the belief that the declaration and spreadsheet were unresponsive.

Magistrate Smith held a telephonic hearing on the afternoon of November 6, 2015 on the issues raised in the Statement of Position. At that time, the Plaintiffs contended that they needed to know the actual amounts of money that were billed and collected on Blitz traffic and the actual amounts of money that were billed and collected by Peerless as a whole in order to establish Peerless's motivation for the fraudulent inducement claim set forth in the Complaint. The Plaintiffs expressed their concern that Mr. Lee would not have any of the backup documentation to support the spreadsheets at the upcoming deposition, and that they would once again be left without the information that they needed to present their claims. Accordingly, the Plaintiffs requested the factual backup for the numbers presented on the spreadsheets.

Magistrate Smith ruled that the Plaintiffs concerns were premature, but that he would be available for a hearing on November 12 if the Plaintiffs needed to revisit this issue during the deposition of Mr. Lee. Magistrate Smith recognized that the Plaintiffs would be asking Mr. Lee about how the spreadsheets were created and that they would be seeking the backup for the same.

On November 12, 2015, the Plaintiffs reconvened the deposition of Mr. Lee as the corporate representative of Peerless with respect to topics 5 and 6.  As expected, Mr. Lee did not have any specific information regarding the backup for the numbers on the spreadsheets.  A telephonic hearing was held with Magistrate Smith during a recess in the deposition.  However, Magistrate Smith denied the Plaintiffs' request that the backup information be produced.[1]

Following that ruling, the Plaintiffs continued the examination of Mr. Lee.  His salient testimony, and the issues of concern for each, for the purposes of this motion is as follows:

**ISSUE 1: Topic 5 – Calculation of Revenue Collected on Blitz Traffic**

Mr. Lee testified that the revenue from Blitz traffic was reduced by disputes from carriers, but he could not testify whether certain carriers had identified disputes and he could not testify whether such disputes applied to any customers other than Blitz.  Accordingly, there is no way to know what any "disputed" amounts represented, and no way to know if the total amount of the disputes were all applied against Blitz on the spreadsheet or if those amounts were divided between Blitz and other Peerless customers:

                          104[2]
14     Q.  Let's move over then to revenue
15   collected estimate.  And I understand, I read

---

[1] This ruling is the subject of an objection filed simultaneously herewith, pursuant to Fed. R. Civ. P. 72(a).

[2] All excerpts quoted herein are from the continued deposition of Douglass Lee, November 12, 2015.  The undersigned counsel represents that the excerpts have been copied verbatim from the electronic transcript, except for any text contained within brackets.  All bold emphasis has been added.  The bracketed language has been substituted so as not to disclose any information that Peerless considers confidential, and the bracketed language is not determinative of any issues raised herein.  A copy of the transcript of the continued deposition of Douglass Lee is attached hereto as **Exhibit 3**, with redactions consistent with Peerless's claims of confidentiality in this matter.  Should either the Court or Peerless require that the unredacted transcript be filed, the Plaintiffs will work with Peerless to determine if the same needs to be filed under seal.

16  your testimony from before about how that has to
17  be estimated because you get one check based on
18  an invoice, correct?
19    A.  On an invoice, yes.
20    Q.  On an invoice you get one check; and if
21  it's not for the 100 percent amount, then you
22  don't know particularly what part was not paid;
23  is that fair to say?
24    A.  Correct, unless they have told us for
105
1  some reason that they weren't, and then we would
2  make the application of the payment based on
3  disputes that they had made.
4    Q.  Do you have any documentation or does
5  Peerless have any documentation from any of the
6  carriers that would pay your invoices that says
7  that Blitz traffic was not paid for?
* * *
24    A.  So we have documentation from [Carrier 1] and
106
1  [Carrier 2] that they will not pay on two-stage
2  dialing.
3    Q.  Any two-stage dialing?
* * *
7    A.  Yeah, I believe so.
* * *
15    Q.  Other than [Carrier 1], has anyone else
16  provided you with any indication that any Blitz
17  traffic was not being paid for?
18    A.  Once again, for two-stage dialing,
19  not -- they didn't call it specifically,
20  customers per se to my knowledge, but they said
21  for two-stage dialing.  [Carrier 2] also has brought
22  up disputes.
* * *
107
1  A.  Correct.
2  **Q.  Anyone else?**
3  **A.  [Carrier 3] or [Carrier 4] may have.  I**
4  **can't recall exactly.  I'd have to look.**
* * *
15    Q.  You're' saying that Blitz uses
16  two-stage dialing; and you then further
17  indicated that [Carrier 1], [Carrier 2], perhaps [Carrier 3]
18  and perhaps [Carrier 4] don't pay for two-stage

6

19   dialing.  So I'm saying does that apply to
20   anyone other than Blitz?
21      A.   Oh, anybody that would be a
22   two-stage -- who has two-stage dialing on our --
23   yes.
24      **Q.   And there are others other than Blitz**
                    108
1   **that have two-stage dialing?**
2      **A.   I'm not sure.**

## ISSUE 2: Topic 5 – Calculation of Revenue Collected on Blitz Traffic

Mr. Lee testified that he did not have his calculations with him and could not testify to

what the amount of revenue was before the application of any disputes or claw-backs.

While the Plaintiffs understand that Peerless wants to define revenue on Blitz's traffic,

Peerless's methodology must be transparent.   Peerless has failed to provide the

information known or reasonably in the possession of Peerless that would allow the

Plaintiffs to understand, duplicate, confirm or challenge Peerless's methodology or

calculations.

                    109
19   In some cases, as you alluded to
20   earlier, if somebody doesn't pay a whole bill
21   and doesn't give me a reason why right away, we
22   apply the payment as best we can to the
23   services.
24      Q.   Okay.  How?
                    110
1      A.   Basically we just apply it kind of like
2   peanut butter until we get a dispute; and if the
3   dispute is brought in and they say this is
4   specific for end-office termination, then I
5   would say, okay, if your dispute is for that,
6   for two-stage dialing, then I amend the way the
7   payment was applied accordingly.  If they're
8   telling me, no, none of that payment should have
9   been applied to this call type, then I take away
10   the cash application of it.
11      Q.   When you were calculating the revenue

12   collected estimate, did you take into account
13   any of these disputes or any claw-backs?

* * *

19      A.  I'm sorry.  For the two that I had
20   referred to for [Carrier 1] and [Carrier 2] that we have
21   documentation that they said they are not paying
22   us on two-stage dialing, we did.  We made the
23   specific application to two-stage dialing for
24   there's, and for the others I think it was just
                           111
 1   whatever the average revenue collected was on --
 2   as cross all of our customers.
 3      Q.  As you sit here today, are you able to
 4   testify as to what the revenue was before the
 5   application of any disputes or claw-backs?
* * *
12      A.  It is in column C.
13      Q.  That's what was billed?
14      A.  Yeah.
15      Q.  Okay.  There are times that payments
16   were made and then later dollars were then, say,
17   repaid back or credited back?
* * *
21      A.  They weren't credited back.  They
22   were -- the application of those dollars that
23   were received were moved from one bucket to
24   another depending on what the application should
                           112
 1   have been.  If they paid me a dollar a month ago
 2   and then this month say, hey, that dollar should
 3   have been 50 cents for end-office origination
 4   and tandem origination, none of it should have
 5   been for end-office term, I got to go back and
 6   move.  It's accounting.  It's timing and it's
 7   matching.
 **8      Q.  Do you have any of the calculations of**
 **9   that with you?**
**10      A.  I do not.**
**11      Q.  Are you able to testify as to any of**
**12   the calculations?**
**13      A.  The calculations, yes.  To the exact**
**14   numbers --**
**15      Q.  Yes, to the --**
**16      A.  -- no.**

17   **Q.  -- to exact numbers.**
18   **A.  No.**

## ISSUE 3: Topic 5 – Calculation of Revenue Collected on Blitz Traffic

Mr. Lee testified that he did not know if Peerless had paid back any disputed amounts

that were deducted from the amounts of Blitz collected revenue on the spreadsheet.  This

calls into question the accuracy of the numbers on the spreadsheet with respect to

whether Peerless reduced the amounts of Blitz collected revenue by amounts that it has

not had to pay back to carriers, and may never pay back to carriers.  Consequently, once

again, Peerless has failed to provide the information known or reasonably in the

possession of Peerless that would allow the Plaintiffs to understand, duplicate, confirm or

challenge Peerless's methodology or calculations.

127
1   Q.  I asked you about claw-backs, and you
2   said one could be a carrier going back and
3   reclaiming moneys paid.
4      A.  If there was a dispute that they lodged
5   and that was in regards to payments that they
6   already had made.
7      **Q.  Let me ask this question:  Has Peerless**
8   **given back to all carriers any disputed money**
9   **that was paid to Peerless that they have**
10  **reclaimed back?**
* * *
14     **A.  I'm not sure.**
15     Q.  Who would know that?
16     A.  We would have to look into our
17  accounting system to see if there were moneys
18  paid back.
19     **Q.  Is it then possible then what is**
20  **reflected on Exhibit 2 may have been some**
21  **claw-backs for which a carrier has requested**
22  **money back but the money hasn't actually been**
23  **paid back?**
* * *
128

3    **A.  I don't know.**
4    **Q.  It's possible?**
* * *
7    **A.  I don't know.**
* * *
20    **Q.   Conceptually though, if there are**
21   **dollars that have been requested back, you don't**
22   **know whether or not they've actually been paid**
23   **or not?**
24    **A.  Not from memory.**

                           129
1    Q.   I appreciate that, and if we were
2    taking your deposition in your individual
3    capacity, it's not a memory test and I agree
4    with that; **but there's information at Peerless**
5    **that could answer that question; is that right?**
* * *
9    **A.  Probably.**
10    **Q.  So Peerless knows, you just don't?**
11    **A.  Correct.**

## ISSUE 4: Topic 5 – Calculation of Revenue Collected on Blitz Traffic

Mr. Lee testified that if Peerless was successful against a dispute, then the numbers on

the spreadsheet regarding revenue collected on Blitz traffic were potentially understated.

Without the backup documentation regarding how much was deducted from the revenue

collected on Blitz traffic and the nature of the disputes giving rise to the deductions, the

Plaintiffs cannot understand, duplicate, confirm or challenge Peerless's methodology or

calculations.  However, based on Mr. Lee's testimony, it is clear that the spreadsheet as

produced is not accurately responsive to topic 5.

                           132
15    Q.   I understand that.  Let me make sure I
16   got this straight though.  The two-stage dialing
17   disputed dollars are already removed from column
18   D; is that correct?
* * *
21    A.   Correct, that's a correct statement.
22    Q.   **So then if Peerless is successful with**

23  **regard to the dispute, turns out that the**
24  **dollars Peerless should have gotten then, then**
         133
1  **that would result in the numbers in column D**
2  **being understated?**
3     **A.  Potentially.  To what degree, I'm not**
4  **sure.**

## ISSUE 5: Topic 5 – Calculation of Revenue Collected on Blitz Traffic

Mr. Lee testified that the spreadsheet was prepared with the assistance of counsel and he

was advised not to disclose communications with counsel in that regard.  Consequently,

Peerless's calculation methodology has been influenced by their attorneys and Peerless is

concealing the extent of such influence behind the attorney-client privilege.

         133
5  **Q.  How did the document or the spread**
6  **sheet that has been attached as Exhibit 2 come**
7  **into being?**
8       **MS. JAMES:  I'm just going to counsel**
9  **you not to disclose any privileged**
10  **communications you might have had with counsel**;
11  but outside of that, you can go you ahead and
12  answer the question.
13  BY THE WITNESS:
14     A.  So Exhibit 2, correct?
15     Q.  Yes.
16     A.  So column A and column B and column C
17  would have been run from a database query on the
18  UQS database at Peerless.
19     Q.  Did you formulate that query?
20     A.  I did not.  Our IT department handles
21  that.
22     **Q.  Okay.  Did you advise the IT department**
23  **of what you needed?**
24     **A.  In conjunction with counsel, yes, to**
         134
1  **answer an interrogatory[3] for this case**.
* * *

---

[3] Mr. Lee erroneously interpreted the descriptions of topic 5 and 6 as interrogatories, and it was later clarified that when he used the word "interrogatory" he was referring to the descriptions of the topics at issue.  *See* Exhibit 3, p.143, l.24 through p.144, l.4.

137

23    Q.   Okay.  That sounds like there was a lot
24  of work that went into column D.

138

1    A.   Yes, because, as I stated earlier,
2  carriers, when they pay us, don't necessarily
3  pay us by customer by phone number.
4    Q.   And it couldn't have been done by some
5  sort of an automated query to one database to
6  get that number?
7    A.   Not from a single database, no.
8    Q.   And did you do the calculations that
9  resulted in column D?
10    A.   Portions.  It was a little bit of an
11  assembly, so to speak.
12    **Q.   Did you do the final assembly?**
13    **A.   In conjunction with counsel, yes, to**
14  **make sure I was interpreting the interrogatory**
15  **properly.**

## ISSUE 6: Topic 5 – Calculation of Revenue Collected on Blitz Traffic

Mr. Lee testified that he did not consider whether the contract between Blitz and Peerless

allowed for reductions based on disputes or claw-backs, resulting in the possibility that

the spreadsheet did not accurately reflect revenue attributable to Blitz traffic.  Without the

backup documentation to reveal the nature of the reductions Mr. Lee made to the

amounts of revenue attributable to Blitz traffic, the spreadsheet is not accurately

responsive to topic 5.

150

15    Q.   So column D is net of any claw-backs or
16  disputes?
17    A.   Let me make sure.
18    Q.   In Exhibit 2.
19    A.   Yes.
20    **Q.   And, again, my question is is if the**
21  **contract between Blitz and Peerless did not**
22  **allow for subsequent reductions for disputes or**
23  **claw-backs, then column D would not accurately**
24  **reflect dollars that should be attributable to**

151

1  **Blitz?**
* * *
5      **A.  If the contract did not have any**
6  **language around collected revenue or disputes or**
7  **claw-backs, then it could be -- you could be**
8  **correct.**

## ISSUE 7 : Topic 6 – Calculation of Peerless Revenue Collected on Traffic

Mr. Lee testified that the revenue amounts on the spreadsheet regarding topic 6 included

revenue on products other than traffic.  This results in the revenue amounts being

artificially high.  This, in conjunction with the previous issues showing that the amount of

Peerless's revenue associated with Blitz traffic is artificially low, serves to improperly

reduce the percentage of Peerless's revenue associated with Blitz traffic so as to

intentionally minimize Peerless's motivation for the actions raised by the Plaintiffs

claims of fraudulent inducement and tortuous interference with a business relationship.

Moreover, based on Mr. Lee's testimony, it is clear that the spreadsheet as produced is

not accurately responsive to topic 6.

143

11  **Q.  Did you also say that the revenue in**
12  **column C included installations and other**
13  **nonrecurring charges?**
14      **A.  Yeah, it's all revenue for the company.**
15      Q.  Would nonrecurring charges be
16  considered traffic?
17      A.  It's associated with traffic.
18      Q.  I understand associated with traffic,
19  **but would nonrecurring charges be traffic?**
* * *
23      **A.  Not necessarily.**
24      Q.  Category six, I know you've been
144
1  referring to it as an interrogatory.  It
2  actually was a category of the 30(b)(6)
3  deposition.

4     A.   My apologies.
5     Q.   That's okay.  It talks about or
6   actually specifically says, the total amount of
7   traffic measured in minutes of use and revenue
8   billed, revenue received and/or collected on the
9   Peerless networks for each month during the
10   entire term of the IP control agreement that is
11   attached to Peerless' answer and counterclaim as
12   Exhibit 1.
13           **If what's been attached to this**
14   **deposition as Exhibit 4 in the revenue column,**
15   **column C, includes nonrecurring charges, that**
16   **would be some charges that are over and above**
17   **what's been asked for with regard to traffic?**
* * *
21     **A.   They are not specifically traffic**
22   **related.**
23     **Q.   But they are contained in column C?**
24     **A.   Yes, we were -- we read the request as**
                      145
1   **being for all revenue that the company billed.**

## ISSUE 8: Topic 6 – Calculation of Peerless Revenue Collected on Traffic

Mr. Lee testified that the revenue collected amounts on the spreadsheet regarding topic 6

were not attributed to the amounts that were billed during the same period, although

Peerless has the ability to do so and does so fairly often.      Further, as the estimated

revenue amounts relating to Blitz traffic was correlated with the estimated billings, the

two spreadsheets use different methodologies and are of limited use for purposes of

comparison.  Without the backup documentation, the Plaintiffs are unable to correlate the

income received with the amounts billed, and again, Peerless has failed to provide the

information known or reasonably in the possession of Peerless that would allow the

Plaintiffs to understand, duplicate, confirm or challenge Peerless's methodology or

calculations.

       146

8   Q.   Okay.   When you do other calculations
9 addressing your percentage of collections, do
10   you compare revenue dollars that have come in
11   the door to bills that have gone out the door?
12   A.   I believe we do.
13   Q.   So sounds like you, to me, like you
14   testified that you do these collection
15   percentages fairly often, right?
16   A.   Yes.
17   **Q.   That wasn't done on Exhibit 5,**
18   **attributing the dollars or comparing the dollars**
19   **that go in the door to the invoices that went**
20   **out the door?**
21        MS. JAMES:  Exhibit 4?
22        MR. MYERS:  Excuse me, Exhibit 4.  Thank
23   you, Katie.
* * *
147
4   **A.   They might not exactly line up.**
* * *
20   **Q.   Just so I know, they're not correlated**
21   **to each other where you could divide the revenue**
22   **collected by the revenue to come up with some**
23   **sort of a collection percentage because they're**
24   **not tied that way?**
148
1   **A.   Not in this exhibit.**


## III.   <u>ARGUMENT</u>

Peerless did not provide a witness to provide testimony on the precise issues articulated for topics 5 and 6 of Schedule A to the notice of taking corporate representative deposition.   With respect to topic 5, Mr. Lee was unable to testify as to specific facts and figures that resulted in the spreadsheet that was produced.   He was unable to testify exactly what deductions were made to the revenue amounts attributable to Blitz.   He was unable to testify as to whether certain disputed amounts were attributed solely to Blitz or to other customers as well.   He was unable to testify about the amount

of revenue received (contrasted with collected or realized) before the application of any deductions. He was unable to testify specifically about the amounts of the deductions in his calculations. He was unable to testify as to whether Peerless was actually divested of some of the amounts that he deducted from Blitz revenue. He was unable to testify as to the amounts Peerless was disputing with other carriers, despite the fact that he testified that if Peerless was successful in such disputes, the amount of revenue attributable to Blitz was understated. He testified that his calculation methodology was influenced by advice of counsel and then shielded Plaintiffs from exploring the extent of such influence by invoking the attorney/client privilege. He also testified that the amounts of revenue attributable to Blitz would not be accurate on the spreadsheet based on the terms of the contract between Blitz and Peerless, at least as they are understood by the Plaintiffs.

With respect to topic 6, Mr. Lee testified that the numbers for the amounts billed for traffic are inaccurate, as they contain categories of billing that are not for traffic. He also testified that the revenue amounts do not correlate to the amounts billed during the same periods.

In short, Peerless provided a spreadsheet in response to topics 5 and 6 and a witness who could not testify as to the facts that were used to generate the same. By doing so, Peerless has prevented the Plaintiffs from understanding, duplicating, confirming or challenging Peerless's methodology or calculations. It is Peerless's position that the spreadsheet contains the numbers, and the Plaintiffs have to accept them.

However, the Plaintiffs are entitled to reasonably explore the identified topics with a corporate representative of Peerless that has the ability to testify about information known or reasonably known to Peerless. Fed. R. Civ. P. 30(b)(6) provides, in pertinent

part:

> Notice or Subpoena Directed to an Organization.  In its notice or subpoena, a party may name as the deponent a public or private corporation, a partnership, an association, a governmental agency, or other entity and must describe with reasonable particularity the matters for examination. The named organization must then designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on its behalf; and it may set out the matters on which each person designated will testify. A subpoena must advise a nonparty organization of its duty to make this designation. The persons designated must testify about information known or reasonably available to the organization.

In *QBE Insurance Corp. v. Jorda Enterprises, Inc.*, 277 F.R.D. 676 (S.D. Fla. 2012), in a subrogation action in which the plaintiff insurer sought to recover from defendant subcontractor the sum that the plaintiff paid over to its insured following a loss, the defendant sought sanctions because the plaintiff refused to produce a suitably knowledgeable witness on various 30(b)(6) topics.   In 39 clearly delineated steps, the U.S. District Court for the Southern District of Florida set forth its "de facto Bible" governing organizational depositions, the following examples of which are directly applicable to the intentional obfuscation and improper maneuvering of Peerless:

> 7. A corporation has an affirmative duty to provide a witness who is able to provide binding answers on behalf of the corporation.

> 11.   Although the rule is not designed to be a memory contest, the corporation has a duty to make a good faith, conscientious effort to designate appropriate persons and to prepare them to testify fully and non-evasively about the subjects.

> 16.  In other words, a corporation is expected to create an appropriate witness or witnesses from information reasonably available to it if necessary.

17. As a corollary to the corporation's duty to designate and prepare a witness, it must perform a reasonable inquiry for information that is reasonably available to it.

*Id.* at 688-89 (citations omitted).

When considering this Renewed Motion in conjunction with the Supplemental Motion to Compel filed by Plaintiffs, it is clear that Peerless has (a) failed in its affirmative duty to provide a witness who is able to provide binding answers on behalf of the corporation; (b) failed to make a   good faith, conscientious effort to designate appropriate persons and to prepare them to testify fully and non-evasively about the subjects; (c)   failed to create an appropriate witness or witnesses from information reasonably available to it if necessary, and (d)   failed in its duty to perform a reasonable inquiry for information that is reasonably available to it.  To the contrary, in light of the intentional obfuscation, delays and misinformation provided by Peerless, it not only failed in the performance of each of these duties, but it did so intentionally.

To this end, the insight in the *QBE* decision regarding remedies provides great guidance as to how this Court should address Peerless's failures and gamesmanship, which remedies could range "from the imposition of costs to preclusion of testimony and even entry of default." *Id.* at 690 (citations omitted).  The court also observed:

> The failure to properly designate a Rule 30(b)(6) witness can be deemed a nonappearance justifying the imposition of sanctions. (*Resolution Trust Corp. v. Southern Union Co., Inc.,* 985 F.2d 196, 198 (5th Cir.1993)). *See also Black Horse Lane Assoc., L.P. v. Dow Chem. Corp.,* 228 F.3d 275, 305 (3d Cir.2000) (a 30(b)(6) witness who is unable to give useful information is "no more present for the deposition than would be a deponent who physically appears for the deposition but sleeps through it").

*Id.*

Peerless has yet to provide a corporate representative to fully testify regarding topics 5 and 6.  Given the fact that Peerless has now made the Plaintiffs travel to Chicago twice to depose Mr. Lee, and both times he has been unprepared and unable to fully testify regarding topics 5 and 6, the Court should require that Mr. Lee or another appropriate designee appear in Orlando, Florida to testify regarding these topics.  Furthermore, the Court should require that Peerless provide a witness who can fully explain the details of the calculations and methodologies employed in creating the spreadsheets it has produced, including a witness who can provide testimony for each topic 5 and 6, regarding the specific amounts that were billed for traffic, the specific payments that were received correlated to the amounts billed during the same period, the specific amounts that were deducted from such received payments, the reasons for such deductions, whether such deductions were for amounts that Peerless was ever divested of, whether the deductions were applied just to Blitz or to other customers (and the reasons for such applications), the amount of deductions applied to Blitz that Peerless is disputing with other carriers and the status of such disputes, and all of the factors that influenced the calculations.  In short, Peerless should be required to provide a witness who can testify about the numbers and supporting documents it used to create the spreadsheets it provided, so that the Plaintiffs can employ the same methodology to the same raw data and obtain the same results.  It is only with this information that the Plaintiffs can understand, duplicate, confirm or challenge Peerless's methodology and calculations.

## IV.   <u>CONLCLUSION</u>

The severe remedies suggested by the Southern District in *QBE* are appropriate in this action.  Peerless has repeatedly withheld the information that the Plaintiffs have

requested on topics 5 and 6.  To date, it has produced a spreadsheet with no backup documentation, and no witness who can testify as to the specific underlying data used to create the same.  This has been done to intentionally prevent the Plaintiffs from challenging the numbers presented by Peerless.  Moreover, Mr. Lee's testimony demonstrates that the numbers on the spreadsheet are neither accurate nor responsive to the topics.

Accordingly, the Plaintiffs respectfully request that this Court enter an Order:

a. Sanctioning Peerless for its conduct in these proceedings, and entering appropriate relief for the benefit of Plaintiffs, including the entry of a default judgment, precluding the introduction of evidence in defense of Plaintiffs' claims, and for such further relief as this Court deems appropriate; or

b. Compelling Peerless to provide:

1)   corporate designees to appear for depositions in Orlando, Florida (with a time limitation of not less than 4 hours) with information sufficient to provide full and complete responses to topics 5 and 6, and who can fully explain the details of the calculations and methodologies employed in creating the spreadsheets Peerless has produced, and who can provide detailed testimony regarding the specific amounts that were billed for traffic, the specific payments that were received correlated to the amounts billed during the same period, the specific amounts that were deducted from such received payments, the reasons for such deductions, whether such deductions were for amounts that Peerless was ever divested of, whether the deductions were applied just to Blitz or to other customers

(and the reasons for such applications), the amount of deductions applied to Blitz that Peerless is disputing with other carriers and the status of such disputes, and all of the factors that influenced the calculations; and

2)  All backup documentation supporting the amounts reflected on the spreadsheets, including: billing records; records of payments received; documentation regarding amounts of disputes and the bases for the same; documentation regarding the application of deductions for disputes; documentation regarding whether Peerless was ever divested of funds as a result of such disputes; documentation of the amounts deducted for disputes that Peerless continues to contest, and the status of such disputes; and any other raw data that was used or was otherwise factored in to the spreadsheets such that the Plaintiffs could recreate the same by applying Peerless's methodology to the data;

c.  Awarding Plaintiffs' their reasonable attorneys' fees and costs associated with this motion, pursuant to Fed. R. Civ. P. 37, and the costs, including attorney's fees and cost of travel, associated with the continuation of the Fed. R. Civ. P 30(b)(6) deposition; and

d.  Granting such other relief as this Court deems just and equitable under the circumstances.

## LOCAL RULE 3.01(g) CERTIFICATION

The undersigned counsel hereby certifies that he personally conferred with counsel for Peerless regarding the issues raised herein, but counsel for Peerless did not

agree with the relief sought herein.  However, in its response to this motion, Peerless indicated that it might agree to provide some additional information, but not the scope of the information requested herein.

*/s/ Ernest J. Myers*
**ERNEST J. MYERS, ESQUIRE**
Florida Bar No.: 947350

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on the __26th__ day of __November__, 2015, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to: Henry T. Kelley, Esq. (hkelley@kelleydrye.com), Matthew C. Luzadder, Esq. (mluzadder@kelleydrye.com), Michael R. Dover, Esq. (mdover@kelleydrye.com), KELLEY DRYE & WARREN, LLP, 333 W. Wacker Drive, Suite 2600, Chicago, IL  60606; and Ronnie J. Bitman, Esq. (rbitman@pearsonbitman.com), PEARSON BITMAN, LLP, 485 N. Keller Road, Suite 401, Maitland, FL  32751.  I FURTHER CERTIFY that I advised counsel for Defendant to file a similar 1-2 page statement of position on this issue.

*/s/ Ernest J. Myers*
**ERNEST J. MYERS, ESQUIRE**
Florida Bar No.: 947350
Email:  emyers@marcusmyerslaw.com
MARCUS & MYERS, P.A.
1515 Park Center Drive, Suite 2G
Orlando, Florida 32835
Tel:    407-447-2550 / Fax:   407-447-2551
Counsel for Plaintiffs, Local Access, LLC
and Blitz Telecom Consulting, LLC