**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

LOCAL ACCESS, LLC and BLITZ
TELECOM CONSULTING, LLC,

    Plaintiffs,

v.                                                                              Case No:  6:14-cv-399-Orl-40TBS

PEERLESS NETWORK, INC.,

    Defendant/Counter-Plaintiff,

v.

LOCAL ACCESS, LLC,

    Counter-Defendant.

## ORDER

This cause comes before the Court on Defendant Peerless Network, Inc.'s Motion for Reconsideration (Doc. 260), filed October 24, 2016.  Plaintiffs responded in opposition on November 11, 2016.  (Doc. 263).  Upon review, Peerless's motion will be granted in part and denied in part.

**I.     BACKGROUND**

This lawsuit arises out of the business dealings of Plaintiffs, Local Access, LLC ("Local Access") and Blitz Telecom Consulting, LLC ("Blitz"), and Defendant, Peerless Network, Inc. ("Peerless").  In late 2011, the members of Blitz began exploring the possibility of selling Blitz or a portion of its assets.  To that end, Blitz retained a brokerage firm to identify potential buyers and facilitate negotiations.  The brokerage firm soon identified West Corporation ("West") as a potential buyer and, after negotiations, West

1

submitted a non-binding letter of interest to Blitz. In the letter of interest, West offered to purchase "all of [Blitz's] Telecommunications business" for $8.5 million. According to Blitz, West later increased its offer to $9 million.

Blitz and West never consummated a deal, however, although the parties disagree as to why. Peerless contends that Blitz found West's offer far too low. Conversely, Blitz asserts that it would have accepted West's offer, but that it was Peerless which convinced it otherwise. Specifically, Blitz states that Peerless proposed an alternative arrangement where Blitz would create a new entity—Local Access—and that Peerless would assign and refer to Local Access all current and future prepaid calling card clients who wished to purchase certain telephone services. In exchange, Local Access would place all traffic it generated from prepaid calling card clients on Peerless's networks for transit. Blitz alleges that it was this business proposal which caused it to abandon the deal with West.

In any event, Blitz's members rejected West's offer and formed Local Access soon thereafter. Local Access and Peerless executed a Homing Tandem Agreement (hereinafter referred to as the "Contract") which, at least in part, codified the terms Blitz says caused it to reject West's offer. Important to this case is a noncompetition agreement contained within the Contract which provides that Local Access and Peerless will not compete with each other in certain aspects of their telecommunications businesses. According to Plaintiffs, Peerless breached the Contract almost immediately after it was signed by failing to adhere to the terms of the noncompetition agreement. Plaintiffs now believe that Peerless never actually intended to follow through on its promises, but proposed the alternative arrangement as a ruse to prevent Blitz from completing the deal with West, which is one of Peerless's competitors.

Plaintiffs filed this lawsuit on March 12, 2014. Blitz sues Peerless for tortiously interfering with its deal with West and for fraudulently inducing it to make a business decision it never would have made but for Peerless's promises. Local Access sues Peerless for breaching the Contract and for fraudulently inducing it to enter into the Contract in the first place. On October 1, 2015, Peerless filed a motion for summary judgment, which the Court denied on September 26, 2016. (Doc. 255). Peerless now asks the Court to reconsider several aspects of its decision denying Peerless's motion for summary judgment.

## II. STANDARD OF REVIEW

Reconsideration of a non-final order will only be granted upon a showing of one of the following: (1) an intervening change in controlling law, (2) the discovery of new evidence which was not available at the time the Court rendered its decision, or (3) the need to correct clear error or manifest injustice. *Fla. Coll. of Osteopathic Med., Inc. v. Dean Witter Reynolds, Inc.*, 12 F. Supp. 2d 1306, 1308 (M.D. Fla. 1998). It is wholly inappropriate in a motion for reconsideration to relitigate the merits of the case, to raise new arguments which should have been raised in previous briefing, or to "vent dissatisfaction with the Court's reasoning." *Madura v. BAC Home Loans Servicing L.P.*, No. 8:11-cv-2511-T-33TBM, 2013 WL 4055851, at *2 (M.D. Fla. Aug. 12, 2013) (citation omitted). Because reconsideration is an extraordinary remedy, the moving party must set forth "strongly convincing" reasons for the Court to change its prior decision. *Id.* at *1.

## III. DISCUSSION

Peerless asks the Court to reconsider three portions of its Order denying Peerless's motion for summary judgment, which the Court discusses in turn.

### A. Enforceability of the Noncompetition Agreement

First, Peerless challenges the Court's denial of its motion for summary judgment on Count I. In that count, Local Access alleges that Peerless breached the Contract by failing to adhere to the noncompetition agreement. Peerless contends that the Court erred by finding that the noncompetition agreement was an enforceable restraint on trade. Specifically, Peerless maintains that Illinois law[1] only permits noncompetition agreements in certain contexts which are not present in this case and, even if this were a case where a noncompetition agreement could legally apply, that the Court failed to determine that the noncompetition agreement protected Local Access's legitimate business interests as required under Illinois law.

Regarding Peerless's argument that the noncompetition agreement cannot be enforced in this type of case, Peerless ignores the controlling law. Peerless submits that Illinois law only allows noncompetition agreements in the contexts of employment contracts, joint partnerships, and contracts for the sale of a business. However, while it is true that most cases discussing noncompetition agreements arise under these circumstances, Illinois courts and courts applying Illinois law have historically enforced noncompetition agreements in a wide range of business dealings where one party would legitimately expect protection against competition from another. *See, e.g.*, *Liautaud v. Liautaud*, 221 F.3d 981, 986 (7th Cir. 2000) (observing that any "valid transaction may support a covenant not to compete" under Illinois law, and enforcing a noncompetition agreement made as a condition for one party gifting his trade secrets to another);

---

[1] Due to a choice of law provision in the Contract, the Court applies Illinois law to Local Access's breach of contract claim against Peerless.

*McDonald's Sys., Inc. v. Sandy's Inc.*, 195 N.E.2d 22, 31 (Ill. App. Ct. 1963) (enforcing noncompetition agreement contained within franchise contract); *Am. Sand & Gravel Co. v. Chi. Gravel Co.*, 184 Ill. App. 509, 525 (Ill. App. Ct. 1914) (enforcing noncompetition agreement contained within exclusivity contract); *cf. Owens Trophies, Inc. v. Bluestone Designs & Creations, Inc.*, No. 12 C 7670, 2014 WL 5858261, at *4 n.5 (N.D. Ill. Nov. 12, 2014) (noting that "the employer-employee and sale of a business frameworks are not the only categories of non-competition agreements"). The noncompetition agreement at issue in this case is therefore not unenforceable simply because it does not relate to employment, a joint partnership, or the sale of a business.

Regarding Peerless's argument that the Court failed to determine that the noncompetition agreement served to protect Local Access's legitimate business interests, Peerless's objection is one of form rather than substance and is, in any event, unfounded.[2] The Court recited the controlling law in its analysis, including the requirement that the noncompetition agreement "must not be greater than necessary to protect the promisee's legitimate interests." (Doc. 255, p. 15 (citing *Reliable Fire Equip. Co. v. Arredondo*, 965 N.E.2d 393, 396 (Ill. 2011))). The Court then described the parties' noncompetition agreement as "mutually beneficial" because it granted Local Access the exclusive right to provide origination services to prepaid calling card clients assigned to it by Peerless while at the same time requiring Local Access to place all prepaid calling

---

[2] In fact, Peerless entirely mischaracterizes the Court's decision on this issue. Peerless states in its motion for reconsideration that the Court explicitly found that the noncompetition agreement "fell outside the zone of protectable interests under Illinois law," but nevertheless decided to enforce the agreement anyways. (Doc. 260, p. 8). Interestingly, Peerless offers no citation to the Court's Order which reflects such a finding.

card traffic Local Access generated on Peerless's networks for transit. (*Id.*). As a result, the Court determined, although implicitly, that the noncompetition agreement served both parties' legitimate interests.

Peerless's quarrel on this issue is with the Court's use of the phrase "mutually beneficial" instead of "legitimate business interests." Whatever confusion this choice of words may have caused, the Court takes this opportunity to clarify. Local Access's legitimate business interest in this case is the success of its prepaid calling card origination services business. *See Cent. Water Works Supply, Inc. v. Fisher*, 608 N.E.2d 618, 623 (Ill. App. Ct. 1993) (finding the success of a company to be a legitimate business interest protectable under Illinois law by a noncompetition agreement). Section 7.1 of the noncompetition agreement is enforceable under Illinois law because it protects this interest by granting Local Access the exclusive right to provide origination services to Peerless's prepaid calling card clients. For this reason and for the reasons already stated by the Court, Peerless is not entitled to summary judgment on Count I.

Because the Court did not err in finding the noncompetition agreement enforceable, Peerless's motion for reconsideration will be denied as to this issue.

### B. Blitz's Inconsistent Theories of Recovery

Next, Peerless contends that the Court erred in denying its motion for summary judgment on the issue of Blitz's damages. In its motion for summary judgment, Peerless argued that, due to Blitz's recovery in a prior lawsuit, Blitz is no longer able to establish that it was damaged in this case because its theory of liability is necessarily contradictory to the theory of liability under which it prevailed. Peerless maintains that the Court misconstrued its argument on the issue by unduly focusing on Blitz's potential for a double

recovery rather than on Blitz's allegedly contradictory theories of liability between the two cases.

Peerless's position is again unfounded. Even assuming that Blitz's theories of liability in the two cases are directly contradictory—which they are not[3]—it is axiomatic that "[l]itigants in federal court may *pursue* alternative theories of recovery, regardless of their consistency." *Brookhaven Landscape & Grading Co. v. J. F. Barton Contracting Co.*, 676 F.2d 516, 523 (11th Cir. 1982) (emphasis added). It is only the actual recovery on mutually exclusive theories which is prohibited. *Id.* Accordingly, Peerless is not entitled to summary judgment on the ground that Blitz has asserted an inconsistent theory of liability in this or any other lawsuit.

Since the Court did not err in finding that Blitz is not prohibited from pursuing an allegedly contradictory theory of liability in this case, Peerless's motion for reconsideration will be denied on this issue.

### C. Failure to Rule on Peerless's Motion With Respect to Count IV

Finally, Peerless asserts that the Court erred by failing to rule on its motion for summary judgment against Count IV of Plaintiffs' Amended Complaint, in which Local Access alleges a claim for fraudulent inducement under Florida law. Upon review of Peerless's motion for summary judgment and the Court's Order, Peerless is correct. The

---

[3] The Court notes that Peerless never raised the issue of judicial estoppel—which prevents a party from taking contradictory positions in separate judicial proceedings—in either its motion for summary judgment, supplemental briefing, or the instant motion for reconsideration.

Court will therefore reconsider Peerless's motion for summary judgment as it relates to Count IV.[4]

In Count IV, Local Access claims that Peerless made several false representations which caused Local Access to execute the Contract. Peerless moves for summary judgment against Count IV for three reasons: (1) Local Access's claim is barred by a merger clause contained within the Contract, (2) Local Access neither pleaded in its Amended Complaint nor disclosed during discovery the damages it seeks, and (3) Local Access cannot establish the damages element of a Florida fraudulent inducement claim.

Regarding the merger clause, Peerless contends that Local Access disclaimed all written and oral representations made by Peerless prior to executing the Contract and any claims of reliance thereon. (Doc. 124, p. 20). Because Local Access premises its fraud claim on Peerless's pre-Contract representations, Peerless reasons that Local Access cannot demonstrate an actionable representation on which it relied. (*Id.*).

The merger clause at issue provides as follows:

> The terms contained in this Agreement and any Schedules, Exhibits, Appendices, tariffs and other documents or instruments referred herein, which are incorporated into this Agreement by this reference, constitute the entire Agreement between the Parties with respect to the subject matter hereof, superseding all prior understandings, proposals and other communications, oral or written. Neither Party shall be bound by any preprinted terms additional to or different from those in this Agreement that may appear subsequently in the other Party's form documents, purchase orders, quotations, acknowledgements, invoices or other communications. This Agreement does not in any way affect either Party's obligation to pay the other Party for any goods or services provided by the other Party pursuant to a separate agreement or under tariff.

---

[4] In its reconsideration of Peerless's motion for summary judgment on Count IV, the Court applies the standards required by Federal Rule of Civil Procedure 56.

(Contract § 21). Contrary to what Peerless suggests, however, the merger clause does not disclaim claims of reliance on Peerless's pre-Contract representations. Rather, the merger clause, which appears under the heading "Entire Agreement," merely acts to integrate all prior understandings and negotiations into the Contract, thus preventing a party from introducing those prior understandings and negotiations in a breach of contract action. Indeed, Florida law is well-settled that, absent a contractual provision expressly disclaiming reliance on representations made prior to the execution of a contract, a party may rely on pre-contract representations to establish a claim for fraud. *See MeterLogic, Inc. v. Copier Solutions, Inc.*, 126 F. Supp. 2d 1346, 1363 (S.D. Fla. 2000) ("Florida law is clear that if a party alleges that a contract was procured by fraud or misrepresentation as to a material fact, an integration clause will not make the contract incontestable, and the oral representations may be introduced into evidence to establish fraud."). As a result, the merger clause contained within the parties' Contract does not bar Local Access's claim that Peerless procured the Contract through fraud.

As to Local Access's allegations of damages, Peerless argues that Local Access neither pleaded its damages in the Amended Complaint nor disclosed its estimation of damages through discovery. A review of the Amended Complaint and the record evidence cited by the parties on summary judgment, however, reveals to the contrary. Paragraph 60 of the Amended Complaint broadly seeks all forms of damages Local Access incurred as a result of Peerless's alleged fraud. Local Access additionally provided Peerless with its estimate of the lost revenues it is seeking during discovery and continued to supplement that estimate as Peerless produced more information and Local Access learned of additional damages. (*See* Doc. 124-20; Doc. 263-1).

On Peerless's last point—that Local Access cannot establish damages—Peerless offers a mix of new argument which was not raised in its original summary judgment motion and old argument which this Court has already examined. Peerless raises for the first time that Local Access is limited under Florida law only to out-of-pocket damages incurred due to Peerless's alleged fraud and cannot recover benefit-of-the bargain damages in the form of lost expected revenues. Peerless also rehashes its prior positions that Local Access's claim for lost revenues is too speculative to warrant recovery and that Blitz's inconsistent theories of liability preclude recovery, both of which the Court addressed and rejected in its Order on Peerless's motion for summary judgment. (Doc. 255, pp. 26–29). Consequently, these grounds are insufficient to justify reconsideration and the Court will not discuss them further. *See Madura*, 2013 WL 4055851, at *2.

Upon reconsideration, Peerless's motion for summary judgment will therefore be denied as to Count IV.

## IV.   CONCLUSION

For the aforementioned reasons, it is **ORDERED AND ADJUDGED** that Defendant Peerless Network, Inc.'s Motion for Reconsideration (Doc. 260) is **GRANTED IN PART** and **DENIED IN PART** as follows:

1. Defendant's Motion for Reconsideration is **GRANTED** with respect to the Court's failure to issue a ruling on Peerless's motion for summary judgment against Count IV of Plaintiffs' Amended Complaint. Upon reconsideration of the record as cited by the parties in their summary judgment briefs and in accordance with the standards required by Federal Rule of Civil

Procedure 56, Peerless's motion for summary judgment is **DENIED** as to Count IV.

2. Defendant's Motion for Reconsideration is **DENIED** in all other respects.

**DONE AND ORDERED** in Orlando, Florida on November 29, 2016.

PAUL G. BYRON
UNITED STATES DISTRICT JUDGE

Copies furnished to:
Counsel of Record